# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

|  |  |
|---|---|
| WILTON MIWOK RANCHERIA, a formerly federally recognized Indian Tribe, ITS MEMBERS and DOROTHY ANDREWS, <br><br> Plaintiffs, <br><br>  v. <br><br> KENNETH L. SALAZAR, et al., <br><br> Defendants. <br> Me-Wuk INDIAN COMMUNITY OF THE WILTON RANCHERIA, <br><br><br><br> Plaintiffs, <br><br>  v. <br><br> KENNETH L. SALAZAR, et al., <br><br> Defendants. | Case No. C-07-02681-JF-PVT <br> Case No. C-07-05706-JF <br><br> ORDER[1] DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL |

On July 16, 2009, the Court entered a stipulated judgment in the above-entitled actions.

On August 4, 2009, the County of Sacramento, California and the City of Elk Grove, California

---

[1] This disposition is not designated for publication in the official reports.

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

("Proposed Intervenors") moved to intervene, vacate the judgment, and dismiss the actions for lack of subject matter jurisdiction.

For the reasons discussed below, the motions to intervene will be granted, the motions to dismiss will be denied, and the motions to vacate the judgment will be held in abeyance.[2] Proposed Intervenors' request to certify the jurisdictional issue for interlocutory appeal will be granted, as will their request to stay further proceedings and execution of the judgment to the extent that the judgment allows for land to be taken into trust by the Secretary of the Interior. The stay will remain in effect pending resolution of the interlocutory appeal or until further order of the Court.

## I. FACTUAL BACKGROUND

### A. The California Rancheria Act

In 1958, Congress enacted the California Rancheria Act ("Rancheria Act" or "the Act"), Pub. L. 85-671, 72 Stat. 619, *amended by* Pub. L. 88-419, 78 Stat. 390. The Rancheria Act provided for termination of formal federal recognition of forty-one named California Indian tribes, or rancherias. The Wilton Rancheria, the tribe represented both by the Wilton Miwok Rancheria, its members, and Dorothy Andrews (the "Wilton Miwok Plaintiffs") and by the Me-Wuk Indian Community of the Wilton Rancheria (the "Me-Wuk Plaintiffs"), was one of the named tribes.

Section 1 of the Act provided that the named rancherias' assets "shall be distributed in accordance with the provisions of this Act,"; Section 2(a) required that either the Indians of each rancheria or the Secretary of the United States Department of the Interior ("the Secretary"), after consultation with the Indians, prepare a distribution plan for each rancheria; and Section 3 required the Secretary to undertake certain actions with respect to each rancheria prior to

---

[2]The motions to vacate the judgment will be administratively terminated pending disposition of the interlocutory appeal.

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

distributing its land pursuant to the distribution plan and removing it from trust status.[3]

Section 10(b) the Act provided that, following the Secretary's compliance with Section 3 and after the distribution plan was approved and final, federal supervision of the tribes and of the status of their tribal members as Indians would be terminated. After termination and distribution, title was to be conveyed to the distributees, which would dissolve both the federal government's fiduciary duty to the distributees and the distributed land's exemption from state and local laws, ordinances, and regulations.

In August 1958, the Secretary issued a distribution plan for the Wilton Rancheria. The plan reflected the Secretary's intent to distribute the Wilton Rancheria's roughly 38.81 acre reservation to eleven individual members and the dependent members of their immediate families, with two additional lots to be held as community property. On September 22, 1964, then-Secretary Stewart L. Udall published in the Federal Register the official notice of the termination of federal supervision of the Wilton Rancheria. 29 Fed. Reg. 13,146 (Sept. 22, 1964).

With formal termination of the Wilton Rancheria, land passed from the tribe to individuals; the trust relationship between the United States and the tribe and the United States and the reservation lands was terminated; state and local legislative jurisdiction was imposed on the distributed land; state judicial authority was imposed; exemptions from state and local taxing authority ended; and federal programs benefitting the tribe and its members were terminated. The tribe also experienced difficulty maintaining tribal sovereignty in the absence of a tribal land base.

**B.    The *Hardwick* Litigation**

On July 10, 1979, a number of distributees from thirty-four rancherias whose federal supervision had been terminated under the Act brought a class action suit against the United States

---

[3]As amended in 1964 by Pub. L. No. 88-419, 78 Stat. 390, the Act requires the Secretary to "construct, improve, install, extend, or otherwise provide, by contract or otherwise . . . irrigation facilities for Indian homes, communities, and lands" prior to distribution of tribal land. In addition, the 1964 amendments require the Secretary of Health, Education, and Welfare to "construct, improve, install, extend or otherwise provide . . . sanitation facilities."

Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

and county tax assessors and collectors for counties in which rancheria lands were located. *Tillie Hardwick, et al. v. United States of America, et al.*, No. C-79-1710 (N.D. Cal.) ("*Hardwick*"). In *Hardwick*, the plaintiffs asserted that the United States violated the Rancheria Act in its efforts to terminate federal supervision of the tribes. Specifically, the plaintiffs asserted that the United States failed to inform the distributees properly of the legal consequences of termination, including that the distributees' lands would be subject to state and local taxation and regulation, and that the distributees no longer would have access to federal programs and protections. The *Hardwick* plaintiffs also asserted that the United States violated the Act by failing to satisfy its obligations under Section 3 before terminating federal supervision and distributing trust land and assets.

On February 28, 1980, the distributees of the Wilton Rancheria were certified as members of the plaintiff class in the *Hardwick* litigation. On July 21, 1983, the parties remaining in the *Hardwick* litigation entered into a Stipulation for Entry of Judgment. That stipulation, however, dismissed the claims of several rancherias, including the Wilton Rancheria, without prejudice. As a result, the dismissed tribes were excluded from the list of seventeen rancherias whose tribal status was restored through the 1983 *Hardwick* judgment. The stipulation also provided that the United States District Court for the Northern District of California would retain jurisdiction over the *Hardwick* litigation.

Plaintiffs allege that the members of the Wilton Rancheria were "dismissed from the *Hardwick* plaintiff class on the erroneous premise that '[n]o class member from these rancherias currently owns property within the original rancheria boundaries.'" (Wilton Miwok Plaintiffs Opp. 6 (citing The Certificate of Counsel Re Hearing on Approval of Settlement of Class Actions (Nov. 16, 1983)).). Plaintiffs contend that this premise was erroneous because, "at the time the Stipulation was entered in 1983, several members of the Wilton Miwok Rancheria, including Plaintiff Dorothy Andrews, owned property within the boundaries of the Rancheria which had been distributed to tribal members in conjunction with the Tribe's unlawful termination in 1964."

4

(*Id.*)

## II. PROCEDURAL BACKGROUND

On February 28, 2007, the Me-Wuk Plaintiffs filed suit pursuant to the Rancheria Act in the United States District Court for the District of Columbia. *See Me-Wuk Indian Community of the Wilton Rancheria v. Salazar et al.*, No. 07-412 (D.D.C). The Me-Wuk Plaintiffs sought federal recognition of the Wilton Rancheria and requested that certain land be taken into trust by the federal government on the tribe's behalf.

Less than two months later, on May 21, 2007, the Wilton Miwok Plaintiffs, also alleging that they represented the Wilton Rancheria, filed a suit in this Court nearly identical to the suit pending in the District of Columbia. The Wilton Miwok Plaintiffs also moved to intervene in the Me-Wuk Plaintiffs' action. On October 24, 2007, District Judge Royce Lamberth granted the Wilton Miwok Plaintiffs' request to intervene in *Me-Wuk Indian Community of the Wilton Rancheria v. Salazar, et al.* and transferred the case to this Court. On November 27, 2007, following the transfer, this Court related the two cases.

On November 30, 2007, both actions were referred to mediation. Over the next eighteen months, Plaintiffs and Defendants ("the United States" or "the government") (collectively "the Parties") participated in joint negotiations with the goal of reaching a settlement to resolve the two cases. On June 4, 2009, the Parties filed a Stipulation for Entry of Judgment ("Stipulated Judgment") in both actions intended to settle all aspects of the cases and dismiss the actions with prejudice as to all claims and parties. The Stipulated Judgment was signed by this Court on June 5, 2009, and final judgment was entered on July 16, 2009, nunc pro tunc to June 8, 2009. (*Me-Wuk Indian Community of the Wilton Rancheria v. Salazar, et al.*, Dkt. Nos. 33, 34; *Wilton Miwok Rancheria et al. v. Salazar, et al.*, Dkt. Nos. 61, 62.)

In the Stipulated Judgment, the Department of the Interior ("the Department") admitted that the United States failed to comply with the Rancheria Act in terminating the Wilton Rancheria and distributing its assets. The Department agreed, among other things, to restore the

federal recognition of Wilton Rancheria and its members, to accept in trust certain lands formerly belonging to the tribe, and to process applications for land into trust for other parcels of land. The Plaintiffs agreed, among other things, to release the Defendants and the rest of the federal government from liability arising out of the litigation, to discharge the Department of Health and Human Services from any claims arising after the implementation of the Rancheria Act and before the restoration of recognition, and to dismiss its claims with prejudice. The Stipulated Judgment also provided that the Court would maintain jurisdiction to determine compliance with the settlement.

On August 5, 2009, Proposed Intervenors jointly filed the instant motions to intervene, vacate the judgment, and dismiss the action. All Parties opposed Proposed Intervenors' motions, and on October 30, 2009, the Court heard oral argument from both the Parties and Proposed Intervenors. On December 9, 2009, the Court issued an interim order indicating that it was "not inclined to dismiss the actions for lack of subject matter jurisdiction" and requesting supplemental briefing from both the Parties and Proposed Intervenors "as to the relevance of the Supreme Court's recent decision in *Carcieri v. Salazar*, 129 S.Ct. 1058 (2009)." (Order of Dec. 9, 2009, at 2.)

All Parties and Proposed Intervenors filed the requested supplemental briefing on January 13, 2010. Proposed Intervenors' briefing included a request for certification of the Court's indicated ruling with respect to the statute of limitations for interlocutory appeal to the Ninth Circuit. In addition, Proposed Intervenors requested a stay of any further proceedings and of implementation of the judgment pending resolution of the interlocutory appeal to the extent that the judgment authorizes the Secretary of the Interior to take land into trust on behalf of the Plaintiffs. On January 15, the Court requested responses from the Parties with respect to Proposed Intervenors' requests. The Parties filed their responses on February 5, 2010.

//

//

6

**III. DISCUSSION**

**A.     Subject Matter Jurisdiction**

Proposed Intervenors contend that this Court does not have and never has had subject matter jurisdiction over Plaintiffs' claims. "[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments." *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966 (9th Cir. 2004). The Court thus must consider the issue of subject matter jurisdiction independently of its consideration of the motions to intervene.

Proposed Intervenors contend that the Court lacked subject matter jurisdiction because the applicable statute of limitations, 28 U.S.C. § 2401(a),[4] has lapsed. Section 2401(a) provides:

> (a) Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

28 U.S.C. § 2401(a). The Court must determine if this statute is jurisdictional and thus not subject to waiver. If it is, and if the statutory period has lapsed, the Court lacked jurisdiction to enter judgment, and the judgment is void.

**a.     Is Section 2401(a) jurisdictional?**

In *John R. Sand & Gravel Co. v. United States*, the Supreme Court recently held that 28 U.S.C. § 2501, a statute of limitations governing claims against the United States in the Court of Federal Claims, is "jurisdictional" and therefore cannot be waived by the government. 552 U.S. 130, 132 (2008). Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years

---

[4]The Me-Wuk Plaintiffs' argument that the applicable limitations period is established by 28 U.S.C. § 2415(c) rather than § 2401(a) is unpersuasive. Plaintiffs' action was not an "action to establish the title to, or right of possession of, real or personal property," but rather one to obtain re-recognition by the federal government under the California Rancheria Act. While recognition may *lead* to the establishment of the right to real or personal property, that fact does not transform the action into an action *brought* under § 2415(c). Notably, only the Me-Wuk Plaintiffs dispute the applicability of § 2401(a).

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

after such claim first accrues." Proposed Intervenors argue that the holding in *John R. Sand* applies equally to Section 2401(a).

In *Cedars-Sinai Medical Center v. Shalala*, which was decided more than a decade before *John R. Sand*, the Ninth Circuit reasoned that "[b]ecause the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar . . . we hold that § 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." 125 F.3d 765, 770 (9th Cir. 1997). The circuit court has yet to examine the continuing vitality of *Cedars-Sinai* in light of *John R. Sand*. However, three district courts within the circuit have considered the issue, and all three have declined to apply *John R. Sand* to Section 2401(a). *See Sierra Club v. Johnson*, 2009 WL 482248, at *9 (N.D. Cal., Feb. 25, 2009) ("This order declines to find that *Sand* alters the Ninth Circuit's pronouncement that Section 2401(a) is not jurisdictional."); *Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n*, 2008 U.S. Dist. LEXIS 98001, *14 (D. Nev., Dec. 3, 2008) ("[T]his court declines to read *John R. Sand & Gravel Co.* as altering the Ninth Circuit's previous conclusion that §2401(a) is not jurisdictional in nature."); *Public Citizen, Inc. v. Mukasey*, 2008 WL 4532540, at *8 (N.D. Cal., Oct. 9, 2008) ("*Sand* involves a different statute of limitations, and the Ninth Circuit has not had the occasion to address *Sand*'s applicability, if any, to the [Federal Administrative Procedure Act]. This court sees no reason to attempt to extend *Sand*'s holding and find such application now.").

The Court acknowledges that federal courts in other circuits have reached the opposite conclusion. *See, e.g.*, *Georgalis v. U.S. Patent & Trademark Office*, 296 Fed. Appx. 14 at **2 (Fed. Cir. 2008) ("While we are presented with a different statute in this case–§ 2401 rather than § 2501–we conclude that the Supreme Court's rationale applies with equal force because both are 'jurisdictional' statutes of limitations."); *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 142 (D.D.C. 2008), *appeal dismissed*, 2009 U.S. App. LEXIS 1822 (D.C. Cir. 2009) ("The Supreme Court's determination that § 2501 is jurisdictional strongly suggests the same conclusion with respect to § 2401."). In the Ninth Circuit, however, *Cedars-Sinai* still is

8

controlling law, and this Court finds the district court authority from within the circuit to be persuasive. Accordingly, for present purposes, the bar of § 2401(a) remains procedural rather than jurisdictional. Because the United States waived § 2401(a) as a defense to Plaintiffs' action, the Court concludes that it had jurisdiction to enter the stipulated judgment in this action.[5] However, for the reasons discussed in Section E of this order, the Court will grant Proposed Intervenors' request to certify this determination for interlocutory appeal.

**B.     Standing, Mootness, and Ripeness**

The Parties also challenge Proposed Intervenors' motions to intervene, vacate, and dismiss on the alternative grounds that Proposed Intervenors lack standing, that their actions are not ripe, and that their arguments are mooted by the Parties' settlement and the subsequent judgment. The standing and ripeness arguments are without merit. With respect to standing, as is discussed more fully below, Proposed Intervenors have protectable interests in their taxing and regulatory powers over the land at issue in the settlement, the settlement directly infringes on those interests, and that infringement is redressable through intervention.

With respect to ripeness, several of the Parties point out that no land actually has transferred to the tribe or its members and any land passing into trust in the future will be subject

---

[5] If § 2401(a) were jurisdictional, the judgment would be void because the statutory period lapsed prior to the initiation of either action. The right of action at issue here "first accrued" when the tribe's trust status was terminated in 1964. The underlying suits thus were filed well after the statutory period of six years had passed.

This is true notwithstanding the Wilton Miwok Plaintiffs' reliance on the "continuing violation" doctrine. Basically, Plaintiffs' argument is that the effects of the 1964 unlawful termination– such as the tribe's exclusion from the annual list of federally recognized tribes and the continued ineligibility of tribe members for federal programs that accompany recognition–continue today and thus represent new, actionable violations. This argument has been rejected explicitly elsewhere. *See, e.g.*, *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) ("Although Felter and her co-plaintiffs do assert that their termination and the loss of their lands and other trust assets, all of which happened in the 1950s and 1960s, continues to have lasting effects on the lives of all 'mixed-blood' Utes, she asserts no new acts committed by Interior since that time.").

to administrative procedures in which Proposed Intervenors may participate. However, as the

government conceded in its brief, and as all of the Parties acknowledged at oral argument,

paragraphs 7, 8, and 10 of the Stipulated Judgment provide for the transfer into trust of at least

some of the land at issue *without* input from Proposed Intervenors or other interested parties. (*Cf.*

Stipulated J. ¶ 7 ("The Department of the Interior *agrees to accept in trust status* any land within

the bouandaries of the former Rancheria . . . .") (emphasis added), *and* Stipulated J. ¶ 8 ("The

Department of the Interior *agrees to take into trust* any land within and/or contiguous . . . to the

former boundaries of the Rancheria which is owned by the Tribe.") (emphasis added), *with*

Stipulated J. ¶ 9 ("The Department *will process, pursuant to 25 C.F.R. Part 151, any applications*

*for land into trust* for any parcels of land acquired by the tribe or an individual member of the

tribe.") (emphasis added). *See also* Defs.' Response to Pet'rs' Mot. to Intervene 11 ("It is true that

the Part 151 process will not apply to a limited amount of land, land within and contiguous to the

former boundaries of the Wilton Rancheria.").) At least as to this land, which is estimated to

consist of approximately sixteen acres, the controversy between Proposed Intervenors and the

Parties' plainly is ripe.

The mootness argument asserted by the government presents a somewhat closer question.

The government relies upon precedents from this and other circuits for the proposition that

intervention is mooted following a settlement agreement that disposes of all claims between all

parties. None of the cases cited by the government, however, involved a consent decree.[6] The

---

[6]In *Tosco Corp. v. Hodel*, the court held that the original parties' settlement agreement, reached pending appeal, mooted motions to intervene by non-party individuals and entities. 804 F.2d 590, 591 (10th Cir. 1986) (*per curiam*). Though the settlement agreement contained executory terms, the agreement was not otherwise described as a consent decree or as having prompted a final judgment, and the *Tosco* court's holding thus is not inconsistent with the Court's determination here. In addition, in contrast to the situation presented here, the court in *Tosco* found that "[t]he absence of these putative intervenors below was a matter of choice–not an inability to seek intervention. The history of this case makes clear that if there are other claimants seeking to assert the same interests as the appellees herein, there is ample opportunity for these putative intervenors to seek review of the important issues in those actions." *Id.*

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

Stipulated Judgment in this case is not a settlement agreement but is a legally enforceable judgment subject to Rule 60(b). *See, e.g.*, *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) ("There is no suggestion in these cases that a consent decree is not subject to Rule 60(b). A consent decree . . . is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.")

In essence, the government asks the Court to find that intervention is barred as moot following the entry of a consent decree. This is not the law in the Ninth Circuit. *See, e.g.*, *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) (holding that post-consent decree intervention is not barred but is "reserved for exceptional cases").

## C.  Motions to Intervene

Circuit case law has established four requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2):  (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). "The rule is construed broadly in favor of applicants for intervention." *United States v. State of Oregon*, 913 F.2d 576, 587 (9th Cir. 1990) (citation omitted).

Alternatively, a court may grant permissive intervention under Rule 24(b) if there is an independent ground for jurisdiction, the motion to intervene is timely, and a common question of law or fact exists. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). Even if the threshold requirements for permissive intervention are met, a court has discretion to deny permissive intervention. *Id*.

Collectively, the Parties argue that Proposed Intervenors fail to make any of the required showings for intervention of right under Rule 24(a)(2). As explained below, the Court finds the

11

Parties' arguments unconvincing.

### 1. Timeliness of Motion to Intervene

All motions to intervene must satisfy a threshold timeliness requirement. *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied."). "Timeliness is to be determined from all the circumstances." *Id.* at 366. The Ninth Circuit has instructed lower courts to "consider three criteria to evaluate timeliness: the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *State of Oregon*, 913 F.2d at 588.

#### a. Stage of the Proceeding

Proposed Intervenors filed their motion to intervene on August 4, 2009, nearly two months after the entry of judgment on June 8, 2009. As the Parties argue, post-judgment intervention generally is disfavored. *See, e.g.*, *Calvert v. Hawkins*, 109 F.3d 636, 638 (9th Cir. 1997). This factor therefore weighs against granting the motion to intervene. *See Alaniz*, 572 F.2d at 659 ("Since the motion was filed after the consent decree was approved, the first factor weighs heavily against appellants.") However, under the "totality of the circumstances" approach mandated by the Supreme Court, "the point to which the suit has progressed is . . . not solely dispositive." *NAACP*, 413 U.S. at 365-66.

#### b. Prejudice to the Other Parties

One of the reasons post-judgment intervention generally is disfavored is the increased potential for prejudice to the other parties to the suit. *Calvert*, 109 F.3d at 638 ("postjudgment intervention is generally disfavored because it creates 'delay and prejudice to existing parties'" (citation omitted)). The Parties contend that granting the motion to intervene will cause them significant prejudice.

The Parties claim that allowing intervention at this stage would "unnecessarily prolong the litigation, threaten the parties' settlement, and further delay" the tribe's federal re-recognition. (Wilton Miwok Pls.' Opp. 12 (quoting *Cal. Dep't of Toxic Substances v. Commercial Realty*

12

*Projects, Inc.*, 309 F.3d 1113, 1119-20 (9th Cir. 2002)).)  While granting Proposed Intervenors'

motions to intervene and re-open obviously would prolong the instant litigation, the extent to

which it would do so is unclear.  All of Proposed Intervenors' motions have been fully briefed.

Proposed Intervenors seek to vacate the judgment and dismiss the instant action.  If the Court

were to grant the motions to intervene but deny Proposed Intervenors' remaining motions, the

Parties would remain free to proceed according to the Stipulated Judgment.  If the Court were to

grant the remaining motions, it would do so only in recognition that the judgment was entered in

error.  In the latter case, the "prolonging" of the litigation would not have been unnecessary, nor

would the undoing of the settlement have been unfair to the Parties.

     The cases in which the Ninth Circuit has upheld denial as untimely of post-settlement or

post-proposed settlement intervention do not focus solely on hardship to the parties.  For example,

in *California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309

F.3d 1113 (9th Cir. 2002) ("*Cal Toxic*"), the circuit court held that the district court did not abuse

its discretion in finding that intervention was sought at a late stage and that undoing the consent

decree at that stage would cause prejudice to the other parties.  *Cal Toxic*, 309 F.3d at 1117.  The

court explained that proposed post-judgment intervenors "must convincingly explain their delay in

filing their motions to intervene."  *Id.*  It held that the district court did not abuse its discretion in

finding that the proposed intervenors had failed to do so where they first learned of the settlement

in August 1999, over sixteen months before the other parties moved for judicial approval of the

consent decree.  *Id.*  In the instant case, Proposed Intervenors acted far more promptly, and the fact

that no land yet has been transferred to the tribe pursuant to the consent decree mitigates any

finding of prejudice.

**c.**    **Reason for and Length of Delay**

     "A party seeking to intervene must act as soon as he 'knows or has reason to know that his

interests might be adversely affected by the outcome of the litigation.'"  *State of Oregon*, 913 F.2d

at 589 (internal citation omitted).  Proposed Intervenors contend that they did not learn of the

instant litigation, let alone the settlement, until after the Stipulated Judgment was filed on June 8,

13

Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

2009. None of the Parties argues that the length of the delay between June 8, 2009, and the filing of the motion to intervene on August 6, 2009, was unreasonable. Instead, the Parties claim that Proposed Intervenors either knew or should have known of the suits well before the entry of judgment.

The Wilton Miwok Plaintiffs contend that Proposed Intervenors knew or should have known of the litigation because the tribe held various community meetings during the pendency of the litigation that were open to non-tribal community members. The tribe's legal counsel discussed the status of the litigation at these meetings. The tribe also held an open house in August 2007 and invited local and state government officials, including Don Nottoli, the Chairman of the Sacramento County Board of Supervisors, to attend. The Wilton Miwok Plaintiffs assert that at the open house, which Nottoli in fact attended, the tribe's co-chairperson, Mary Tarango, provided an update on the tribe's restoration efforts. Moreover, they claim that on December 6, 2007, during a tribal council meeting to discuss tribal cemetery issues, Tarango specifically told Nottoli that the tribe was litigating with the United States in federal court.

Nottoli states in his declaration that while he was "generally aware that members of [the] Plaintiff[] [tribe] were interested in seeking re-recognition as a tribe by the United States," his receipt in June 2009 of a news article regarding the settlement "was the very first time [he] was informed that Plaintiffs Wilton Miwok Rancheria and the Me-Wuk Indian Community of the Wilton Rancheria . . . had filed any lawsuit or were even involved in any litigation relating to their tribal status or a request for the federal government to take land into trust on their behalf." (Nottoli Decl. ¶¶ 3-4.)

The Parties argue that Proposed Intervenors had "constructive knowledge" in other ways. For example, they point out that Proposed Intervenors have legal counsel who could have accessed the public documents in the case. However, there is no authority for the proposition that in this context knowledge should be inferred solely from the fact that court documents have been filed. The Me-Wuk Plaintiffs also point to press coverage of the tribe's continued efforts for recognition over the last several decades, including past litigation and legislative efforts, but none

14

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

of the articles or publications cited show that Proposed Intervenors knew or should have known

that the Plaintiffs were seeking re-recognition *in this Court in this case*.

The Court is obligated to "accept as true the non-conclusory allegations made in support of

an intervention motion." *S.W. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir.

2001). Given that obligation and the scarcity of evidence showing that Proposed Intervenors

knew or should have known of this specific litigation prior to June of last year, the Court

concludes reluctantly that the motion to intervene is timely.[7] *Cf. United States v. Carpenter*, 298

F.3d 1122, 1125 (9th Cir. 2002) (finding motion to intervene timely when filed eighteen months

after complaint was filed and after the original parties had participated in six months of court-

ordered mediation and four days of settlement negotiations where "the intervenors acted as soon

as they had notice that Proposed settlement was contrary to their interests") *with County of*

*Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (upholding denial of intervention where

proposed intervenor, who waited until after a "proposed, and as it turned out, final settlement had

been reached," "should have realized that the litigation might be resolved by negotiated

settlement" because, among other things, "local newspapers reported the ongoing negotiations

between the parties").

## 2. Remaining Rule 24(a)(2) Factors

Despite the Parties' arguments to the contrary, *Scotts Valley Band of Pomo Indians of the*

*Sugar Bowl Rancheria v. United States*, 921 F.2d 924 (9th Cir. 1990) ("*Scotts Valley*") controls

the instant analysis with respect to the other Rule 24(a)(2) factors. In *Scotts Valley*, the Scotts

Valley Band and several individual Band members sued the federal government, individual

federal officials, the County, and the County tax collector seeking the restoration of federal trust

status of certain property near the City of Chico ("the City"). After amending the complaint to

---

[7]The Court is acutely aware of the importance of recognition to the tribe. As it
commented at oral argument, the Court also believes that Proposed Intervenors should consider
more seriously alternatives to the present litigation, given that the relief that Proposed Intervenors
seek would undo that recognition.

15

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

1  add the City as a defendant, the Band dismissed the City and several other defendants. Thereafter,

2  the City moved to intervene, but the district court denied the motion.

3       The Ninth Circuit reversed, concluding that the City had satisfied all of the requirements

4  of Rule 24(a)(2) for intervention as of right. First, the court determined that timeliness was not at

5  issue because the City had moved to intervene directly after it was dismissed from the action.

6  Second, with respect to the question of whether there was "inadequate representation by the

7  existing parties," the court held that "the United States and its officials, because they do not

8  directly share the City's municipal interest, would not necessarily act to protect that interest."

9  *Scotts Valley*, 921 F.2d at 927.

10      The court then turned to the "significantly protectable interest" requirement. It began by

11  summarizing the City's arguments:

12        The City contends that it has a protectable interest in the action because of its
         taxing and regulating powers associated with the Chico Rancheria. The City
13        currently collects approximately $3,300 per year in property taxes. The City
         enforces land-use regulations which prevent incompatible property uses and
14        control excess demand on public facilities. Further, the City enforces health and
         safety regulations. If the Indian Bands succeed in having the rancherias restored to
15        federal trust status, the City will lose its ability to tax the Chico Rancherias and to
         enforce its municipal regulations.
16

17  *Id.* It then reviewed other appellate decisions discussing "sufficient interest" and concluded that

18  "the City's tax and regulatory concerns are sufficient . . . to establish a protectable interest in the

19  Indian Bands' action and to allow intervention by the City." *Id.*

20      Finally, the circuit court addressed whether "disposition of the action may, as a practical

21  matter, impair or impede the applicant's ability to protect" its interest. The district court had

22  found that the City was protected by federal regulations that required the Secretary of the Interior

23  to consider the tax and land use consequences of the transfer of the land into trust. The Ninth

24  Circuit concluded that these regulations did not provide adequate protection where the tribe "seeks

25  to *compel* the Secretary of the Interior to acquire the rancherias" such that, if the tribe is

26  successful, "the Secretary will not be in a position to exercise the discretion contemplated by the

27

28

16

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

administrative scheme." *Id.* at 928 (emphasis in original). The court held that because the City would, in such a situation, be unable to avail itself of the regulations, "[a]llowing the City to intervene in [the] action is the only practical means of protecting its taxing and regulatory interest." *Id.*

*Scotts Valley* applies directly here. First, as was the case in *Scotts Valley, the United States* does not share the municipal interests of Proposed Intervenors; indeed, the Stipulated Judgment does not reflect any consideration of those interests. Second, the principal interests identified by Proposed Intervenors–their taxing and regulatory powers over the land sought by the Plaintiffs–are the same as those recognized as protected in *Scotts Valley*. Third, as was the case in *Scotts Valley*, granting the motion to intervene is the only way to allow Proposed Intervenors to protect their interests as to specific tracts of land at issue in the Stipulated Judgment. While the Parties point out that Proposed Intervenors may participate administratively in the land-into-trust and gaming decisions that are yet to be made, the government concedes that the Stipulated Judgment provides for the automatic transfer into trust of approximately sixteen acres of land. (*See* Stipulated Judgment ¶¶ 7-8.)

Because Proposed Intervenors have satisfied all of the requirements of Rule 24(a)(2), the Court will grant their motion to intervene as of right.

**D.     Motions to Re-Open, Vacate, and Dismiss[8]**

Pursuant to Federal Rule of Civil Procedure 60(b)(1), (4), and (6), Proposed Intervenors move to re-open the two cases, vacate the judgments, and dismiss both actions. Because the Court will grant Proposed Intervenors' request that the issue of subject matter jurisdiction be certified for interlocutory appeal, disposition of these motions will be deferred pending the outcome of the appeal.

---

[8]The Me-Wuk Plaintiffs argue that Proposed Intervenors' motions should be denied because the settlement provides the Wilton Rancheria with has sovereign immunity, which the tribe has not waived. This argument lacks merit. By joining the litigation voluntarily, the tribe has waived any claim to immunity. Proposed Intervenors' motions are an ancillary proceeding in the same case the tribe itself brought.

17

**E.      Request to Certify Jurisdictional Issue for Interlocutory Appeal**

Following the Court's indication in its request for additional briefing that it was "not inclined to dismiss for lack of subject matter jurisdiction," Proposed Intervenors asked the Court to certify the issue of whether 28 U.S.C. § 2401(a) is jurisdictional–and therefore not subject to government waiver–for interlocutory appeal.

A district court, in its discretion, may certify an issue for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) there is a "controlling question of law," (2) on which there are "substantial grounds for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). As the Ninth Circuit has recognized, § 1292(b) is to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Cement Antitrust*, 673 F.2d at 1026 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (holding that "exceptional circumstances [must] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment")); *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (noting that § 1292(b) is available only "[i]n rare circumstances").

### 1.      Whether the Issue Presents a "Controlling Question of Law"

Proposed Intervenors contend that the interpretation of 28 U.S.C. § 2401(a) presents a controlling question of law because "[t]he continuing vitality of *Cedars-Sinai* is a pure question of law that is potentially dispositive of all issues in this case. If, as Proposed Intervenors have contended, *John R. Sand* overrules *Cedars-Sinai*, then vacation of the judgments and dismissal of these actions with prejudice is mandatory." (Proposed Intervenors Jan. 13 Br. 10:24-27.)

The government argues that the jurisdictional effect of the statute of limitations is not a controlling question of law at this stage of the litigation (1) because Proposed Intervenors' motions are moot; and (2) because Proposed Intervenors lack standing to seek relief under Rule 60(b). For the reasons discussed above, the Court concludes that these arguments lack merit. The Me-Wuk Plaintiffs contend that the issue of whether § 2401(a) is jurisdictional is not a controlling

18

Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

issue of law because even a determination that it is "would not negate the fact that the Court still has subject matter jurisdiction of this case under 28 U.S.C. § 2415(c), the statute preserving Indian claims for rights to property." (Me-Wuk Pls.' Feb. 5 Br. 3:10-12.) This argument is unpersuasive for the reasons discussed in footnote four. The Wilton Miwok Plaintiffs renew their argument that the government's failure to recognize the tribe constitutes a series of "continuing violations." Accordingly, they argue, even if § 2401(a) is jurisdictional, it would not bar the underlying action here. This argument is unpersuasive for the reasons discussed in footnote three.

Proposed Intervenors' motions to intervene, though filed late in the day, are well taken. Even if they were not, the proper construction of 28 U.S.C. § 2401(a) presents a controlling question of law because if *John R. Sand* applies, dismissal is required even if intervention is not. Jurisdictional statutes of limitation "forbid[] a court to consider whether certain equitable considerations warrant extending a limitations period." *John R. Sand*, 552 U.S. at 133.

### 2. Whether There Are "Substantial Grounds for Difference of Opinion" on the Issue

In support of their contention that the statute of limitations issue is one "as to which there is substantial ground for difference of opinion," Proposed Intervenors cite out-of-circuit authority holding that § 2401(a) is jurisdictional; the Ninth Circuit's own "signal[ing] [of] its doubts as to the continuing vitality of *Cedars-Sinai*;" the Ninth Circuit's holding in *Marley* that § 2401(b) is jurisdictional; and Ninth Circuit precedent prior to *Cedars-Sinai* holding that § 2401(a) is jurisdictional, which it contends is similar to the pattern of precedent with respect to § 2401(b) that led to the holding in *Marley* that § 2401(b) is jurisdictional. (Proposed Intervenors' Jan. 13 Br. 12-13.)

Plaintiffs argue that certification of the statute of limitations issue is inappropriate because "[t]he only difference of opinion that currently exists . . . is outside the Ninth Circuit" and "[c]ertifying to the Ninth Circuit can do nothing to resolve any split that exists between circuits." (Me-Wuk Pls.' Feb. 5 Br. 3:21-23.) They contend that certification is improper because "[t]his Court is bound to follow the rulings of the Ninth Circuit, and within the Ninth Circuit, there exists

19

1   no substantial difference of opinion as to the fact that the statute of limitations under 25 U.S.C. §

2   2401(a) are [sic] not held to be jurisdictional in nature."  (Wilton Miwok Pls.' Feb. 5 Br. 7:17-

3   21.)[9]

4           Because certification under § 1292(b) is appropriate only in "exceptional circumstances,"

5   substantial grounds for difference of opinion do not arise merely by virtue of a question's novelty.

6   *See, e.g.*, *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("The mere presence of a disputed issue that

7   is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground

8   for difference of opinion.").  Mere disagreement with the Court's ruling also is insufficient to

9   create a substantial ground for difference of opinion.  *See, e.g.*, *Mateo v. The M/S Kiso*, 805 F.

10  Supp. 792, 800 (N.D. Cal. 1992) ("A party's strong disagreement with the Court's ruling is not

11  sufficient for there to be a 'substantial ground for difference'; the proponent of an appeal must

12  make some greater showing.").  Nonetheless, substantial grounds for difference of opinion may

13  exist where there is "a dearth of precedent within the controlling jurisdiction and conflicting

14  decisions in other circuits."  *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C.

15  2003).  The instant case falls within the realm of cases suitable for certification, because the Ninth

16  Circuit has not ruled on the effect of *John R. Sand* on § 2401(a) and because its ruling in *Marley*

17  with respect to § 2401(b) suggests that the Ninth Circuit might agree with the other circuits that

18  have considered § 2401(a) since *John R. Sand*.

### 3.      Whether "an Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation"

19
20          Proposed Intervenors contend that certification of this issue for interlocutory appeal meets

21  the third prong of the test because the case will be terminated immediately if their appeal is

22  successful.  In support of their argument, Proposed Intervenors cite a number of cases involving

23  statute of limitations issues in which the courts found interlocutory appeal appropriate under §

24

25  ────────────────

26          [9] The government, consistent with its position that the statute of limitations issue is not a

27  controlling question of law, presents no additional opposition to Proposed Intervenors' position
    on this prong of the test for certification for interlocutory appeal.

28
Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

1   1292(b).

2       The government argues that certifying the issue for interlocutory appeal will delay rather

3   than advance the termination of the litigation because judgment already has been entered.  The

4   government asserts that none of the cases cited by Proposed Intervenors involves a request for

5   certification after a trial has begun or after the case has been resolved.  The Me-Wuk Plaintiffs

6   argue that immediate appeal would not advance termination of the litigation because the Court

7   would retain jurisdiction under 28 U.S.C. § 2415(c).  For reasons discussed above, this argument

8   is without merit.

9       The Wilton Miwok Plaintiffs make several arguments as to why an immediate appeal of

10  the statute of limitations issue would not advance the ultimate termination of the litigation.  First,

11  they argue that because the final judgment was entered on June 8, 2009, the instant litigation

12  already has been terminated.  Second, they again assert their "continuing violations" argument to

13  contend that the case would continue even if Proposed Intervenors were successful on appeal.

14  Third, they argue that even if this Court lacks subject matter jurisdiction, the judgment entered is

15  not automatically void.  Instead, they contend that the judgment is void "only when there is a plain

16  usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its

17  authority," *Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir.

18  1980), and that this "usurpation" occurs when "no arguable basis [exists] on which [the court]

19  could have rested a finding that it had jurisdiction."  *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir.

20  1986).  The "arguable basis" here, they assert, is that there was Ninth Circuit precedent holding

21  that § 2401(a) was waivable and that the Court had subject matter jurisdiction when the

22  government did not assert the statute of limitations defense.

23      On balance, the Court concludes that certification would further rather than frustrate

24  resolution of the underlying dispute.  The jurisdictional issue is important not only for the Parties

25  but to future litigants who may be similarly situated.  Once the jurisdictional issue has been

26  resolved, either the instant cases will be dismissed or the Court may proceed to exercise its legal

27  and equitable powers with respect to the judgment without any doubt as to its jurisdiction to do so.

28
21
Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, GRANTING MOTIONS
TO INTERVENE, DEFERRING DISPOSITION OF MOTIONS TO VACATE JUDGMENT, AND CERTIFYING
JURISDICTIONAL ISSUE FOR INTERLOCUTORY APPEAL
(JFLC3)

**F.     Stay**

Proposed Intervenors request that the Court stay further proceedings and the acceptance of land into trust on Plaintiffs' behalf pending resolution of the interlocutory appeal.

The government contends that a stay is unnecessary because the Plaintiffs have not applied to the government to take any land into trust and that if and when they do, Proposed Intervenors may seek a stay at that time from the Ninth Circuit. The government has submitted a declaration from Troy Burdick of the Bureau of Indian Affairs stating that the Plaintiffs have not organized a tribal government and have not applied to have any of the identified land taken into trust. In addition, the government suggests that a stay is unnecessary because Proposed Intervenors may participate in the fee-to-trust application review process and because the Secretary is obliged to take Proposed Intervenors' interests into account in deciding whether to take land into trust.

The Me-Wuk Plaintiffs do not contest Proposed Intervenors request for a stay pending resolution of any interlocutory appeal.[10] The Wilton Miwok Plaintiffs contend that a stay is inappropriate because there are no proceedings to stay. They argue that 28 U.S.C. § 1292(b) provides for stays of "proceedings," and that execution of the judgment does not qualify as a proceeding. They also contend that Proposed Intervenors' arguments under Rules 62(b) and 60(b)(6) should be rejected because Proposed Intervenors are non-parties and have no standing to intervene.

The Court notes that the Stipulated Judgment provides for the automatic transfer into trust of approximately sixteen acres of land, apparently without the procedural protections that would accompany other transfers. This fact alone justifies the issuance of a stay. Accordingly, execution of the judgment is stayed to the extent that it provides for automatic transfer of land into trust. As

---

[10]In their supplemental briefing filed February 5, 2009, the Me-Wuk Plaintiffs argue that the Court cannot vacate the judgment and dismiss the action because of collateral estoppel. This is an argument the Plaintiffs could have made but did not make in their earlier briefs. The Court specifically requested briefing on Proposed Intervenors' application for certification of the jurisdictional issue for interlocutory appeal. It did not request, nor will it consider, additional arguments regarding Proposed Intervenors' other pending motions.

noted previously, resolution of Proposed Intervenors' remaining motions will be deferred pending the outcome of the interlocutory appeal.

**IT IS SO ORDERED.**

DATED: February 23, 2010

_____
JEREMY FOGEL
United States District Judge