**E-Filed 12/13/2012**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TILLIE HARDWICK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　Defendants. | Case No. 5:79-cv-1710-JF<br><br>ORDER DENYING MOTION TO ENFORCE JUDGMENT<br><br>[re: dkt. entry 340] |

　　　　Mona Bragdon ("Bragdon") and Anthony Ramirez ("Ramirez") (collectively, "Plaintiffs") move to enforce a stipulation and judgment entered in this case in 1983. The motion is opposed by the United States of America and the Picayune Rancheria of Chukchansi Indians ("the Chukchansi Tribe" or "the Tribe"), both of which were parties to the stipulation and judgment. The Court has considered both the written briefing and the oral argument presented at the hearing on October 16, 2012. For the reasons discussed below, the motion will be denied.

## I. BACKGROUND

　　　　The California Rancheria Act of 1958 terminated many Indian tribes, including the Chukchansi Tribe. Tribal property was distributed to individual tribe members ("distributees"). *See Hardwick v. United States*, No. C 79-1710 JF (PVT), 2006 WL 3533029, at *1 (N.D. Cal. Dec. 7,

2006). "Upon distribution of tribal property, the tribes ceased to exist and members of the former tribes were stripped of their status as Indians." *Id*. In 1979, individuals from a number of terminated tribes filed the *Hardwick* action seeking "restoration of their status as Indians and entitlement to federal Indian benefits, as well as the right to reestablish their tribes as formal government entities." *Id*. In July 1983, the United States entered into a stipulation for entry of judgment ("1983 Stipulation") with respect to members of seventeen former tribes, including the Chukchansi Tribe. Dkt. Entry 343, Req. for Jud. Notice, Ex. A.[1] Final judgment was entered pursuant to that stipulation in December 1983. Dkt. Entry 343, Req. for Jud. Notice, Ex. F.

The present motion arises out of an internal political dispute within the Tribe. When the Tribe was terminated pursuant to the Rancheria Act, its former lands were distributed to two individuals, Maryan Ramirez[2] ("Maryan") and her brother, Gordon Wyatt ("Wyatt"). Dkt. Entry 342, Bragdon Decl., ¶ 3. Wyatt died in 1966. *Id*. ¶ 5. Following the 1983 Stipulation, the Bureau of Indian Affairs ("BIA") began working with Maryan to reorganize the Tribe. *Id*. ¶ 7. Maryan died in 1985 before the reorganization was completed, at which point the BIA offered to work with Maryan's daughter, Bragdon. ¶¶ 12-13. When Bragdon declined, the BIA began working with Jane Lawhon ("Lawhon"), a descendant of Wyatt. *Id*. ¶¶ 14-15. Lawhon and other Wyatt descendants gained control of the tribal leadership, adopted a constitution in 1988, and subsequently obtained BIA recognition of that constitution. *Id*. ¶¶ 16-19. The Wyatt descendants opened enrollment of the Tribe to hundreds of individuals and in 1992 disenrolled the Ramirez descendants. *Id*. ¶¶ 20-21. Some but not all Ramirez family members were re-enrolled in 2003. *Id*. ¶ 21.

It is undisputed that the BIA has recognized and worked with the Tribe's governing body since 1989, and that the Ramirez family never has sought review of the BIA's decision to certify the Tribe's election and recognize leadership of the Wyatt group. Instead, the Ramirez family now seeks to unwind more than twenty years of tribal governance by asserting that under the terms of the 1983 Stipulation and a later stipulation entered in 1987 ("1987 Stipulation"), restored recognition

---

[1] Plaintiffs' request for judicial notice is granted.

[2] Maryan received land both individually and in her capacity as Administrator for the Estate of Nancy Wyatt.

2

Case No. 5:79-cv-1710-JF
ORDER DENYING MOTION TO ENFORCE JUDGMENT

was available only to individuals who still possessed Indian lands at the time of the 1983 and 1987 Stipulations. Plaintiffs argue that because the Wyatt family sold its Indian lands prior to commencement of the *Hardwick* litigation, Dkt. Entry 342, Bragdon Decl., ¶¶ 4-6, and because Maryan thus was the only individual still in possession of Indian lands, *id*. ¶ 6, Maryan and her descendants were the only individuals who ever had authority to reorganize the Tribe. Plaintiffs seek an order that would "enforce" the judgment by declaring that "the 1983 and 1987 Stipulations for Entry of Judgment limited restored recognition to those individuals still in possession of Indian lands at the time of their execution and that Maryan Ramirez and her descendants were consequently the only individuals with authority to formally organize the Chukchansi Indian Tribe and establish tribal leadership." Dkt. Entry 340-1, Prop. Order. Both the United States and the Tribe oppose the motion, arguing *inter alia* that the Court lacks subject matter jurisdiction, that the motion is untimely, and that Plaintiffs' construction of the Stipulations is incorrect.

## II. DISCUSSION

### A. Jurisdiction

The United States and the Tribe argue that although Plaintiffs have styled their motion as a motion to enforce a stipulated judgment, Plaintiffs actually are challenging the legitimacy of the Tribe's governing body, which to date has been controlled by their rivals, the Wyatt family. As noted above, the BIA has recognized and dealt with the Tribe's governing body since 1989. A challenge to the BIA's recognition of a tribe's governing body is subject to the provisions of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*., which provides for judicial review of "final agency action" and "[a]gency action made reviewable by statute." 5 U.S.C. § 704. An agency action is "final" for purposes of the APA if it "mark[s] the consummation of the agency's decision-making process . . . it must not be of a merely tentative or interlocutory nature." *Western Radio Services Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (internal quotation marks and citation omitted). "Since 1975, regulations governing challenges to decisions of the Bureau of Indian Affairs have required an administrative appeal from most BIA decisions before judicial review of such decisions can be obtained." *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1393 (9th Cir. 1993). "There is a series of agency procedures mandated for exhaustion of administrative

3

1  appeals." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988). A decision
2  made by a lower-level BIA official must be appealed to the BIA Area Director; the Director's
3  decision may be appealed directly to the Interior Board of Indian Appeals ("IBIA"). *Id.*; *Lujan*, 982
4  F.2d at 1393. Plaintiffs have not sought administrative review of the BIA decision to recognize the
5  Tribe's governing body. Accordingly, the United States and the Tribe take the position that this
6  Court lacks subject matter jurisdiction over Plaintiffs' motion.

7  Plaintiffs assert that they do not seek resolution of an intra-tribal dispute and do not
8  challenge the BIA's recognition of the Wyatt-controlled governing body. Mot. at 5-6. Claiming
9  that they merely "are seeking enforcement of the plain meaning of the 1983 Stipulated Judgment,"
10 *id*. at 7, Plaintiffs cite this Court's decision in *Cloverdale Rancheria of Pomo Indians of California*
11 *v. Salazar*, No. 5:10-cv-605 JF/PVT, 2011 WL 1883196 (May 17, 2011), as authority that a motion
12 to enforce judgment is the proper means to do so. In *Cloverdale*, the plaintiffs asserted an APA
13 challenge based in part upon the BIA's alleged failure to comply with the *Hardwick* judgment's
14 requirement that the BIA assist the Cloverdale Rancheria to reorganize. *Cloverdale*, 2011 WL
15 1883196, at *5. The Court concluded that an agency's failure to comply with a stipulated judgment
16 does not give rise to a claim under the APA, and that "the proper claim for relief would appear to be
17 one for enforcement of" the stipulated judgment. *Id*.

18 *Cloverdale* is not precisely on point, because the plaintiffs there claimed that the BIA had
19 failed to comply with an obligation to assist in reorganization, while Plaintiffs here claim that the
20 BIA many years ago improperly recognized the wrong individuals as having authority to reorganize
21 the Tribe. Moreover, despite Plaintiffs' protestations to the contrary, it is obvious that this motion in
22 fact is motivated by Plaintiffs' intra-tribal dispute with the Wyatts. Plaintiffs assert that:

> For more than 20 years, the Tribal Council has intentionally undertaken efforts to marginalize the Ramirez family and prevent them from seeking the relief they request by way of this motion. In 1990, in an effort to dilute any political power the Ramirez family had and maximize the power of the wrongfully established tribal leadership, the Tribal Council approved 600 applications for membership. An additional 700 applications were approved shortly thereafter. It was later discovered that a vast number of the approved applicants were ineligible for membership, but that discovery did not occur before the votes of the newly enrolled members were used to secure the Wyatts' control and marginalize the Ramirez family.

28 Dkt. Entry 352, Reply, p. 10. Ultimately, however, Plaintiffs have framed their motion not as a

4

Case No. 5:79-cv-1710-JF
ORDER DENYING MOTION TO ENFORCE JUDGMENT

1  challenge to any particular BIA decision but rather as a request for enforcement of the judgment,
2  and the Court is constrained to give Plaintiffs the benefit of the doubt. As is discussed below, this
3  Court expressly retained jurisdiction over disputes arising from the implementation of the judgment.
4  Accordingly, the Court concludes that it has subject matter jurisdiction over Plaintiffs' motion.

**B.     Timeliness**

In general, civil actions against the United States are barred unless they are filed within six years after the right of action first accrues. 28 U.S.C. § 2401(a). "Indian Tribes are not exempt from statutes of limitations governing actions against the United States." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990). This six-year limitations period applies to actions to enforce judgments. *Id*. Plaintiffs' claim that the individuals who reorganized the Tribe lacked authority to do so arose at latest in 1989 when the BIA recognized the Wyatt-led tribal government. The present motion to enforce judgment was not filed until more than twenty years later, in June 2012.

Plaintiffs assert that the statute of limitations was contractually extended by the express terms of the stipulated judgment. Plaintiffs cite the following language of the 1983 Stipulation:

> 12. For the purpose of resolving any disputes which arise among the parties in the course of implementing the judgment to be entered pursuant to this stipulation, or for extending the time within which any act may or must be performed under this Stipulation, the Court shall retain jurisdiction over this matter for a period of two (2) years from entry of judgment, or for such longer time as may be shown to be necessary on a duly-noticed motion by any party.

Dkt. Entry 343, Req. for Jud. Notice, Ex. A, ¶ 12. The Court agrees that this language grants it discretion to extend the applicable six-year limitations period upon a showing that such extension is "necessary." However, Plaintiffs have failed to make such a showing, as they have not come close to offering an adequate explanation as to why they could not have sought relief within six years after entry of the judgment in 1983, or indeed, any time within the past twenty-plus years. Plaintiffs assert in their reply brief that "for years, the Tribal Council and Federal Government falsely led the Ramirez family to believe that they did not have the rights expressly set forth in the Stipulated Judgment." Dkt. Entry 352, Reply, p. 10. This assertion is unsupported by citation to any evidence. Plaintiffs also allude to their disenrollment from the Tribe, asserting that the resulting "financial

5

Case No. 5:79-cv-1710-JF
ORDER DENYING MOTION TO ENFORCE JUDGMENT

burden, coupled with political ostracization, left the Ramirez family powerless to assert their rights." *Id*. Again, Plaintiffs fail to support their assertion with a citation to evidence. Even assuming that their disenrollment somehow created a barrier to the filing of a motion to enforce judgment, Plaintiffs were re-enrolled in the Tribe in 2003, *nine years ago*. Dkt. Entry 342, Bragdon Decl., ¶ 21. Accordingly, although it retains jurisdiction to resolve disputes arising out of the judgment for so long as may be "necessary," the Court concludes that Plaintiffs have failed to demonstrate that the requisite necessity exists here.

**C.     Interpretation of the 1983 Stipulation**

Finally, even if it were to exercise its discretion to entertain Plaintiffs' motion on the merits, the Court would conclude that Plaintiffs have failed to establish that they are entitled to the relief requested. Plaintiffs rely upon the following language:

> 2. The Court shall certify a class consisting of all those persons who received any of the assets of the Rancherias listed and described in paragraph 1 pursuant to the California Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect to any real property they received as a result of the implementation of the California Rancheria Act.

Dkt. Entry 343, Req. for Jud. Notice, Ex. A, ¶ 2. This language does not support Plaintiffs' position that the class included only those individuals who possessed former Rancheria lands *at the time of the 1983 Stipulation*. Rather, it appears that the class included all distributees of lands pursuant to the California Rancheria Act *and all individuals who inherited such lands from a distributee*. The Stipulation does not contain or even suggest a requirement that the distributee or heir must still possess the lands *at the time of* the 1983 Stipulation.[3]

Maryan was a class member, because she received assets of the Rancheria and in fact still held former Rancheria lands as of the date of the 1983 Stipulation. Although Maryan transferred her lands into trust with the United States on or about October 15, 1984, it is reasonable to assume (and there is no evidence that suggests otherwise) that her descendants inherited her trust interest,

---

[3] Plaintiffs rely upon provisions of the 1987 Stipulation defining "Indian Parcels" as lands "currently owned by Indians" to support their construction of the 1983 Stipulation. The Court concludes that the 1987 Stipulation, which resolved a tax dispute four years after the 1983 Stipulation was approved, is irrelevant to interpretation of the class definition set forth in the 1983 Stipulation.

6

Case No. 5:79-cv-1710-JF
ORDER DENYING MOTION TO ENFORCE JUDGMENT

1  which was sufficient to give them authority to participate in the reorganization of the Tribe.

2  Wyatt also was a class member, because he received assets of the Rancheria. He died in
3  1966, and it appears that Lawhon and others inherited Wyatt's lands from him; Plaintiffs submit a
4  grant deed showing that Lawhon and others quitclaimed those lands to Maryan in August 1976. *See*
5  Dkt. Entry 342, Bragdon Decl., ¶ 4 and Ex. A. Under a plain reading of paragraph 2 of the 1983
6  Stipulation, the fact that Lawhon and other individuals inherited Indian lands from Wyatt brings
7  them within the class, even though they may have transferred the lands before the *Hardwick*
8  litigation was commenced.

### III. ORDER

Accordingly, the motion to enforce judgment is DENIED.

DATED: November 13, 2012

_____
JEREMY FOGEL
United States District Judge