**United States District Court**
For the Northern District of California

**\*\*E-Filed 3/7/2014\*\***

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TILLIE HARDWICK, et al., | Case No. 5:79-cv-01710-JF |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

| | |
|---|---|
| NISENAN TRIBE OF THE NEVADA CITY RANCHERIA; RICHARD JOHNSON, in his official capacity as Tribal Chairman and in his individual capacity as the heir/legatee/successor to the distributees Peter Johnson and Margaret Johnson, | Case No. 5:10-cv-00270-JF |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO CORRECT A CLERICAL MISTAKE IN *HARDWICK*; GRANTING PLAINTIFFS' MOTION TO AUGMENT THE ADMINISTRATIVE RECORD IN *NISENAN*; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS IN *NISENAN*; AND DISMISSING THE *NISENAN* ACTION WITH PREJUDICE |
| v. | |
| S.M.R. JEWELL, Secretary of the Interior; KEVIN K. WASHBURN, Assistant Secretary – Indian Affairs for the United States Department of the Interior,[1] | |
| Defendants. | |

---

[1] S.M.R. Jewell and Kevin W. Washburn are substituted as the defendants in this action in place of their predecessors, Ken Salazar and Larry Echo Hawk.  *See* Fed. R. Civ. P. 25(d).

1    Plaintiffs move  to correct a clerical mistake in the *Hardwick*[2] action and to augment the

2    administrative record in the *Nisenan*[3] action;  Defendants move to dismiss the operative first

3    amended complaint ("FAC") in the *Nisenan* action or, in the alternative, for judgment on the

4    pleadings.  *Hardwick* ECF No. 356; *Nisenan* ECF Nos. 87, 93.  The Court concludes that these

5    motions are appropriate for disposition without oral argument pursuant to Civil Local Rule 7-1(b).

6    For the reasons discussed below, all three motions will be granted, and the *Nisenan* action will be

7    dismissed with prejudice.

8                                 **I. BACKGROUND**

9         Early in the twentieth century, the United States sought to improve "the landless, homeless

10   or penurious state of many California Indians" by purchasing numerous small tracts of land known

11   as "rancherias."  *Williams v. Gover*, 490 F.3d 785, 787 (9th Cir. 2007) (internal quotation marks and

12   citation omitted).  The United States held these lands in trust for Indians who resided thereon.  *Table

13   Bluff Band of Indians v. Andrus*, 532 F. Supp. 255, 258 (N.D. Cal. 1981).  Trust lands could not be

14   taxed or conveyed to others.  *Id.*  "The United States controlled the rancheria lands under the special

15   fiduciary duty owed by the United States to the Indian people."  *Id.*  Among the rancherias

16   established during this time frame was the Nevada City Rancheria, which was established by

17   executive order of President Woodrow Wilson on May 6, 1913.  *Nisenan* Admin. R. ("AR") 001.[4]

18   **A.      Rancheria Act**

19        In 1958, Congress passed the California Rancheria Termination Act ("Rancheria Act" or

20   "Act"), which provided that the lands of forty-one enumerated California rancherias were to be

21   removed from trust status and distributed to the individual Indians of those rancherias.  Cal.

22   Rancheria Termination Act, Pub. L. No. 85-671, 72 Stat. 619 (1958), *amended by* Pub. L. 88-419,

---

[2] *Tillie Hardwick, et al. v. United States, et al.*, No. 5:79-cv-01710-JF.

[3] *Nisenan Tribe of the Nevada City Rancheria, et al. v. S.M.R. Jewell, Secretary of the Interior, et al.*, No. 5:10-cv-00270-JF.

[4] The United States manually filed the administrative record in *Nisenan* on October 30, 2012. *Nisenan* ECF No. 79.

2

Case Nos. 5:79-CV-01710-JF, 5:10-cv-00270-JF
ORDER GRANTING PLS.' MOTION TO CORRECT A CLERICAL MISTAKE ETC.

United States District Court
For the Northern District of California

78 Stat. 390 (1964).[5]  The Act directed the Indians of each enumerated rancheria, or the Secretary of the Interior after consulting them, to prepare a plan for distributing the rancheria's lands or for selling the lands and distributing the proceeds.  *Id*. § 2(a).  Upon approval of such plan by the Secretary of the Interior, general notice of the plan was to be given and individual Indians were to be afforded an opportunity to object.  *Id*. § 2(b).  Upon subsequent approval of the plan by a majority of adult Indians who were to participate in the distribution, the plan was to be executed.  *Id*.  Prior to distribution, the Secretary of the Interior was to complete certain tasks, including making improvements to rancheria lands and appointing guardians to protect the rights of Indians who were minors or otherwise in need of assistance in conducting their affairs.  *Id*. §§ 2, 3, 8.

Under the Rancheria Act, approval of a distribution plan was to be considered final; the distribution of assets was "not be the basis for any claim against the United States."  *Id*. § 10(a).  Upon final approval of a plan, the Secretary of the Interior was to revoke the tribal constitution and corporate charter adopted by the Indians of the subject rancheria.  *Id*. § 11.  Following distribution, former rancheria lands no longer would be exempt from state and federal taxes.  *Id*. § 2(d).  Moreover, Indians who received any part of a rancheria's assets, and the dependent members of their immediate families, no longer would be entitled to federal services or immunities based on Indian status.  *Id*. § 10(b).

**B.      Termination of the Nevada City Rancheria**

The Nevada City Rancheria was one of the forty-one rancherias enumerated by the Rancheria Act.  *Id*. § 1.  The Bureau of Indian Affairs ("BIA") prepared a distribution plan dated June 8, 1959.  AR 189-192.  The plan indicated that:  Peter Johnson and his wife Margaret Johnson ("the Johnsons") were the only Indians living on the Rancheria; the Johnsons were the only individuals entitled to share in distribution of the Rancheria lands and assets; the Johnsons had requested that the BIA sell the Rancheria lands and assets on their behalf; no minor children would

---

[5] On August 11, 1964, the Rancheria Act was amended to provide for the distribution of lands and assets of any California rancheria upon request by a majority vote of the adult Indians of the rancheria.  Cal. Rancheria Termination Act, Pub. L. No. 85-671, 72 Stat. 619 (1958), *amended by* Pub. L. 88-419, 78 Stat. 390 (1964).  The Nevada City Rancheria lands at issue here were distributed prior to the date of the amendment.

3

United States District Court

For the Northern District of California

receive funds from the sale of the Rancheria lands and assets; and the Johnsons were capable of handling their own affairs. *Id.* On July 17, 1959, the acting BIA Area Director sent the BIA Commissioner a letter stating that general notice of the distribution plan had been given on June 16, 1959, and no objections had been received. AR 199. On July 29, 1959, the BIA Commissioner responded by letter, advising that the distribution plan was approved and should be presented to the Johnsons for their acceptance. AR 201.

On August 4, 1959, the BIA Area Director sent the Johnsons a letter informing them that the distribution plan had been approved by the United States and that a general meeting of distributees would be held for the purpose of voting on the plan. AR 202. The letter advised that the Johnsons could vote by written ballot in lieu of attending the general meeting. *Id.* On August 14, 1959, both Peter and Margaret Johnson voted to approve the distribution plan. AR 212. However, distribution was delayed by other individuals claiming mining rights in Rancheria lands. AR 224. The Johnsons were permitted to remain on the property during this period of delay. *Id.* Margaret died on May 24, 1963. AR 256. A few days later, on May 27, 1963, the Rancheria lands were sold for $20,500. AR 258. The grant deed was delivered to the purchasers on June 10, 1963. AR 261.

On September 22, 1964, the Secretary of the Interior published a Notice stating as follows:
Notice is hereby given that the Indians named under the Rancherias listed below are no longer entitled to any of the services performed by the United States for Indians because of their status as Indians, and all statutes of the United States which affect Indians because of their status as Indians, shall be inapplicable to them, and the laws of the several States shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction. Title to the lands on the Rancherias has passed from the United States Government under the distribution plan of each Rancheria.

29 Fed. Reg. 13,146 (Sept. 22, 1964), copy provided at AR 340-42. The Notice listed the Nevada City Rancheria and identified Peter Johnson as the sole distributee. *Id.*

C.   ***Hardwick* Action**

In 1979, individuals from a number of terminated rancherias, including the Nevada City Rancheria, filed the *Hardwick* action in this district . *Hardwick* Compl., attached as Ex. A to Pls.' Opp. to Mot. to Dismiss, *Nisenan* ECF No. 96-1. The *Hardwick* plaintiffs sought restoration of their status as Indians, entitlement to federal Indian benefits, and the right to reestablish their tribes as

4

formal government entities. *Id.* In 1980, Judge Williams certified a class consisting of all persons who received assets of thirty-four enumerated rancherias pursuant to distribution plans prepared under the Rancheria Act; any heirs or legatees of such persons; and any Indian successors in interest to real property so distributed. Order Re: Class Cert., attached as Ex. B. to Pls.' Opp. to Mot. to Dismiss, *Nisenan* ECF No. 96-2.

In 1983, the *Hardwick* court entered a "Stipulation For Entry Of Judgment" ("1983 Stipulation"). *Hardwick* 1983 Stipulation, attached as Ex. D to Pls.' Opp. to Mot. to Dismiss, *Nisenan* ECF No. 96-2. The 1983 Stipulation divided the class members into three subclasses. The first subclass consisted of individuals who received assets of seventeen enumerated rancherias[6]; the United States agreed to restore those individuals to Indian status, restore recognition of their tribes as Indian entities, and provide a mechanism by which individuals holding former rancheria lands could reconvey those lands to the United States to be held in trust. *Id.* at ¶¶ 1-8. The second subclass consisted of individuals who received assets of twelve different enumerated rancherias[7]; as to those individuals, the action was dismissed without prejudice. *Id.* at ¶ 14. The third subclass consisted of individuals whose claims were barred under the doctrine of *res judicata*; as to those individuals, the action was dismissed with prejudice. *Id.* at ¶¶ 15-19.

For unknown reasons, the 1983 Stipulation failed to mention the Nevada City Rancheria. *See id.* ¶¶ 1-19. On May 20, 1992, Judge Williams dismissed the *Hardwick* action and closed the case. *Hardwick* ECF No. 258.

**C.    *Nisenan* Action**

On January 20, 2010 – more than forty years after the Nevada City Rancheria's lands were

---

[6] The seventeen rancherias were: (1) Big Valley; (2) Blue Lake; (3) Buena Vista; (4) Chicken Ranch; (5) Cloverdale; (6) Elk Valley; (7) Greenville; (8) Mooretown; (9) North Fork; (10) Picayune; (11) Pinoleville; (12) Potter Valley; (13) Quartz Valley; (14) Redding; (15) Redwood Valley; (16) Rohnerville; and (17) Smith River. *Hardwick* 1983 Stipulation at ¶ 1, attached as Ex. D to Pls.' Opp. to Mot. to Dismiss, *Nisenan* ECF No. 96-2.

[7] The twelve rancherias were: (1) Graton; (2) Scotts Valley; (3) Guideville; (4) Strawberry Valley; (5) Cache Creek; (6) Paskenta; (7) Ruffeys; (8) Mark West; (9) Wilton; (10) El Dorado; (11) Chico; and (12) Mission Creek. *Hardwick* 1983 Stipulation at ¶ 14, attached as Ex. D to Pls.' Opp. to Mot. to Dismiss, *Nisenan* ECF No. 96-2.

Case Nos. 5:79-CV-01710-JF, 5:10-cv-00270-JF
ORDER GRANTING PLS.' MOTION TO CORRECT A CLERICAL MISTAKE ETC.

United States District Court

For the Northern District of California

1   sold and more than seventeen years after *Hardwick* was closed – the Nisenan Maidu Tribe of the

2   Nevada City Rancheria filed an action challenging the sale of the Rancheria's lands and the

3   termination of the Tribe. *Nisenan* ECF No. 1. The *Nisenan* action was related to the *Hardwick*

4   action under this Court's Civil Local Rules. Order Relating Cases, *Nisenan* ECF No. 21.

5          On August 5, 2011, the Nisenan Maidu Tribe filed a motion for leave to proceed with its

6   claims in the *Hardwick* action. Pl.'s Mot to Reopen *Hardwick*, *Nisenan* ECF No. 48. The Tribe

7   argued that those claims were still viable because they had not been disposed of by the *Hardwick*

8   judgment. *Id.* On September 22, 2011, this Court issued an order deferring consideration of the

9   Tribe's motion, noting that despite the Tribe's references to *Hardwick* as "pending," the case had

10  been closed since 1992. Order Deferring Consideration of Pl.'s Mot. at 5 n.4, *Nisenan* ECF No. 67.

11  The Court opined that the proper procedural vehicle for seeking to reopen *Hardwick* was a motion

12  pursuant to Federal Rule of Civil Procedure 60(b). *Id.* at 6. However, the Court indicated that it

13  would not be inclined to grant relief under Rule 60(b) unless the Nisenan Maidu Tribe could

14  demonstrate that its members would have been in the subclass entitled to relief under the *Hardwick*

15  settlement and not in one of the subclasses whose claims were dismissed. *Id.* at 6-7.

16         On October 30, 2012, the United States filed the administrative record in the *Nisenan* action.

17  *Nisenan* ECF No. 79. The Nisenan Maidu Tribe thereafter abandoned its attempt to reopen

18  *Hardwick*, conceding that its members would have been in the second *Hardwick* subclass of

19  individuals whose claims were dismissed without prejudice. Pl.'s Mot. for Correction of Clerical

20  Mistake at 5, *Hardwick* ECF No. 356. The Tribe now asserts that the Nevada City Rancheria's

21  omission from the list of rancherias enumerated in connection with the second *Hardwick* subclass

22  was the result of a clerical error, and it requests that the error be corrected pursuant to Federal Rule

23  of Civil Procedure 60(a). *Id.* The Tribe also requests that the Court dismiss claims relating to the

24  Nevada City Rancheria from *Hardwick* without prejudice and that such dismissal be effective as of

25  the date of the dismissal order rather than *nunc pro tunc*. *Id.* at 7.

26         On March 13, 2013, the Nisenan Maidu Tribe filed the operative first amended complaint

27  ("FAC"), adding an individual, Richard Johnson, as a named plaintiff both in his official capacity as

28  Tribal Chairman and in his individual capacity as the heir/legatee/successor to Peter and Margaret

United States District Court

For the Northern District of California

1  Johnson. *Nisenan* ECF no. 84.  Claims 1-4 of the FAC assert that during the process of distributing

2  the lands of the Nevada City Rancheria and terminating the Tribe's status, Defendants breached

3  obligations imposed by the Rancheria Act and by their fiduciary duty to Plaintiffs.  Claim 5 of the

4  FAC seeks review of those alleged wrongs pursuant to the Administrative Procedure Act ("APA"),

5  5 U.S.C. § 701 *et seq*.  Plaintiffs have filed a motion for leave to augment the administrative record

6  with documents that they contend are relevant and support their claims.  Defendants oppose the

7  motion to augment and seek dismissal of the *Nisenan* action with prejudice.

8  ## II. MOTION TO CORRECT CLERICAL MISTAKE IN *HARDWICK*

9  The Nisenan Maidu Tribe asserts that the Nevada City Rancheria was one of the rancherias

10  that was the subject of the *Hardwick* litigation; claims arising from distribution of the Nevada City

11  Rancheria's lands were subject to dismissal without prejudice pursuant to the terms of the 1983

12  Stipulation; and the Nevada City Rancheria was omitted from the 1983 Stipulation as result of a

13  clerical mistake.  The Tribe requests that the Court correct that mistake.

14  "The court may correct a clerical mistake or a mistake arising from oversight or omission

15  whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).  The

16  record strongly suggests that the Nevada City Rancheria in fact was omitted from the 1983

17  Stipulation as a result of a clerical mistake.  The Nevada City Rancheria was listed on the

18  "Summary Sheet" of "Terminated Rancherias" that was attached to the *Hardwick* complaint as

19  Exhibit A.  *Hardwick* Compl., attached as Ex. 1 to Mot. to Correct Clerical Error, *Hardwick* ECF

20  No. 356-1.  The Nevada City Rancheria also was one of the thirty-four rancherias enumerated in the

21  *Hardwick* court's order granting class certification.  Order Re: Class Cert., attached as Ex. 4. to Mot.

22  to Correct Clerical Error, *Hardwick* ECF No. 356-5.  The attorney who acted as lead plaintiffs'

23  counsel has submitted a declaration saying that Nevada City Rancheria was a party to the *Hardwick*

24  action.  Decl. of David Rapport ¶¶ 14-15, *Nisenan* ECF No. 37.  The attorney who acted as lead

25  counsel for the federal defendants has submitted a declaration stating that he does not know why the

26  Nevada City Rancheria was omitted from the 1983 Stipulation but he believes that the Nevada City

27  Rancheria was omitted from the 1983 Stipulation as a result of a clerical error.  Decl. of Paul Locke

28  ¶¶ 5-7, *Nisenan* ECF No. 38.

**United States District Court**
For the Northern District of California

1    The Tribe asserts, and Defendants do not dispute, that had the Nevada City Rancheria been

2    included in the 1983 Stipulation the Tribe's members would have been in the second subclass whose

3    claims were dismissed without prejudice.  Defs.' Opp. at 2, *Hardwick* ECF No. 359.  Defendants

4    nonetheless oppose the motion to correct, arguing that there is insufficient evidence to show that the

5    Nevada City Rancheria was omitted from the 1983 Stipulation because of a clerical mistake.  *Id.* at

6    2-3.  However, Defendants offer no alternative explanation for the omission of the Nevada City

7    Rancheria.  Based upon the record as a whole, the Court concludes that the Nevada City Rancheria

8    was omitted from the 1983 Stipulation as a result of a clerical mistake.

9        Defendants point out that if the motion to correct is granted, the Nisenan Maidu Tribe and

10   the Nevada City Rancheria may be able to take advantage of a provision of the 1983 Stipulation

11   limiting Defendants' ability to assert a laches defense.  Defendants argue that they would be

12   prejudiced if that limitation were extended to the Nisenan Maidu Tribe at this late date.  However,

13   the fact that the Court's correction of its clerical error may afford the Tribe and the Nevada City

14   Rancheria an additional defense does not constitute a basis for the Court to decline to correct the

15   error.

16       Without citation to authority, the Tribe requests that the Court grant its motion effective as

17   of the date of the present order rather than *nunc pro tunc* to the date of the 1983 Stipulation.  Rule

18   60(a) motions generally are treated as motions for relief *nunc pro tunc*, and the Tribe does not offer

19   a compelling reason why the Court should depart from that practice.  *See, e.g., Miller v.*

20   *Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (equating request for entry *nunc pro*

21   *tunc* with Rule 60(a) motion); *Retail Clerks Union v. Food Employers Council, Inc.*, 351 F.2d 525,

22   528 (9th Cir. 1965) (discussing Rule 60(a) modification of an injunction *nunc pro tunc*); *Ford v.*

23   *City of Cape Girardeau*, 151 F.R.D. 116, 117 (E.D. Mo. 1993) (amending judgment *nunc pro tunc*

24   pursuant to Rule 60(a)).  The Rule 60(a) motion will be granted *nunc pro tunc* to the date of the

25   1983 Stipulation.

26       **III. MOTION TO AUGMENT ADMINISTRATIVE RECORD IN *NISENAN***

27       On October 29, 2012, Defendants filed an administrative record containing fifty-two

28   documents in the *Nisenan* action.  *Nisenan* ECF No. 78.  Plaintiffs attached nineteen additional

8

United States District Court

For the Northern District of California

1   documents to their FAC filed March 13, 2013.  *Nisenan* ECF No. 84.  The parties subsequently

2   agreed that eleven of the additional nineteen documents should be included in the administrative

3   record, and Defendants filed a supplement to the administrative record on May 22, 2013.  *Nisenan*

4   ECF No. 91.  Plaintiffs now move to add the remaining eight documents.

5        Plaintiffs' motion is governed by the APA, which provides the waiver of sovereign

6   immunity in this case.[8]  *See* 5 U.S.C. § 702.        The APA provides for judicial review of "final

7   agency action" and "[a]gency action made reviewable by statute."  5 U.S.C. § 704.  The agency

8   action will be set aside if it is "unsupported by substantial evidence or arbitrary, capricious, an abuse

9   of discretion, or otherwise not in accordance with the law."  *Thompson v. United States Dep't of*

10  *Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks and citations omitted).

11  "[J]udicial review is to be based on the full administrative record before the agency *when it made its*

12  *decision*."  *Id*. at 555-56.  "The whole administrative record, however, is not necessarily those

13  documents that the agency has compiled and submitted as 'the' administrative record."  *Id*. at 555

14  (internal quotation marks and citation omitted).  The record to be reviewed "consists of all

15  documents and materials directly or indirectly considered by agency decision-makers and includes

16  evidence contrary to the agency's position."  *Id*. (internal quotation marks and citation omitted).

17  "The reviewing court can go outside the administrative record but should consider such evidence

18  relevant to the substantive merits of the agency decision only for the limited purpose of background

19  information or to determine whether the agency considered all the relevant factors."  *Id*.

20       The agency actions about which Plaintiffs complain are Defendants' termination of the

21  Nevada City Rancheria without first taking certain actions required by the Rancheria Act, and

22  Defendants' failure to reinstate the Nevada City Rancheria and the Nisenan Maidu Tribe to

23  protected Indian status.  FAC ¶¶ 112-16, *Nisenan* ECF No. 84.  As noted above, the Nevada City

24  Rancheria lands were sold in 1963 and members of the Nevada City Rancheria were stripped of

---

25

26  [8] The FAC asserts waiver of sovereign immunity pursuant to "the APA, and the United States'
    fiduciary and trustee obligations owed to the Nevada City Rancheria and its members."  FAC ¶ 7,

27  *Nisenan* ECF No. 84.  However, "[t]ribes cannot allege a common law cause of action for breach of
    trust that is wholly separate from any statutorily granted right."  *Gros Ventre Tribe v. United States*,

28  469 F.3d 801, 810 (9th Cir. 2006).  The APA is the only statute identified in the FAC that provides
    for waiver of sovereign immunity.

United States District Court

For the Northern District of California

1   their Indian status by means of a notice placed in the Federal Register in 1964.  The Nevada City

2   Rancheria and the Tribe have not been reinstated to Indian status since them.

3          It does not appear that the eight documents at issue would have been materials directly

4   considered in taking these agency actions.  One document is a letter dated 1936 – well before the

5   enactment of the Rancheria Act in 1958 – discussing the Nevada City Rancheria; five documents are

6   BIA letters, memoranda, or reports dated between 1956 and 1958, discussing other rancherias or the

7   Rancheria Act generally; one document is a 1975 memorandum from the Commissioner on Indian

8   Affairs interpreting the Rancheria Act; and one document is a 1978 notice in the Federal Register

9   describing the terms of judgments entered in other lawsuits.  Arguably, the documents may have

10  been considered indirectly by agency decision-makers, as they all relate to the Nevada City

11  Rancheria, to the Rancheria Act as applied to other rancherias, or to the Rancheria Act generally.

12  Even if the documents were not actually considered by Defendants when taking the agency actions

13  challenged here, they provide useful background information.  Defendants have not articulated any

14  prejudice that would result from the Court's consideration of the documents.  Accordingly, the

15  motion to augment the administrative record also will be granted.

16          **IV. MOTION FOR JUDGMENT ON THE PLEADINGS IN *NISENAN***

17          Defendants seek dismissal of the FAC or, in the alternative, judgment on the pleadings.

18  Because Defendants filed an answer to the FAC before filing the present motion, the motion

19  properly is construed as a motion for judgment on the pleadings rather than as a motion to dismiss.

20  *See* Fed. R. Civ. P. 12(b) (motion to dismiss under Rule 12(b) must be made before responsive

21  pleading); Fed. R. Civ. P. 12(c) (motion for judgment on the pleadings may be brought after

22  pleadings are closed); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (a Rule 12 motion

23  filed after an answer may be construed as a motion for judgment on the pleadings under Rule 12(c)).

24          Because a motion for judgment on the pleadings under Rule 12(c) is "functionally identical"

25  to a motion to dismiss under Rule 12(b)(6), the same legal standard applies to both motions.

26  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  A motion to dismiss tests

27  the legal sufficiency of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

28  When determining whether a claim has been stated, the Court accepts as true all well-pled factual

10

United States District Court
For the Northern District of California

1  allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration*

2  *(Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true

3  allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations

4  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

5  *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

6  omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient

7  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

8  *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A

9  claim is facially plausible when it "allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged." *Id.*

11        As noted above, the APA provides the only waiver of sovereign immunity for the claims

12  asserted in the FAC. The APA does not contain a specific statute of limitations; however, in

13  general "every civil action commenced against the United States shall be barred unless the

14  complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

15  "Indian Tribes are not exempt from statutes of limitations governing actions against the United

16  States." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990).

17        On their face, the claims relating to termination of the Nevada City Rancheria accrued in

18  1964 when the notice of termination was published in the Federal Register. Plaintiffs filed the

19  *Nisenan* action in January 2010, well outside the limitations period. With respect to the claims

20  relating to Defendants' failure to reinstate the Nevada City Rancheria and the Nisenan Maidu Tribe,

21  Plaintiffs contend that those claims were tolled during the pendency of the *Hardwick* action.

22  However, even assuming that the claims had not expired before the filing of *Hardwick* and that they

23  were tolled during its pendency, *Hardwick* was closed in 1992. Plaintiffs filed the *Nisenan* action

24  more than six years later, in January 2010. Accordingly, all of the claims asserted in the *Nisenan*

25  action appear to be time-barred.

26        Plaintiffs assert that Defendants waived the defense of statute of limitations by failing to

27  raise it in their answer in *Hardwick*. However, Defendants raised the defense in their answers to

28  both the complaint and FAC in the *Nisenan* action. *See Nisenan* ECF Nos. 13, 88. Plaintiffs argue

United States District Court
For the Northern District of California

1   that Defendants are judicially estopped from "taking contrary positions" in the *Hardwick* and

2   *Nisenan* actions.  "Judicial estoppel is an equitable doctrine invoked by a court at its discretion."

3   *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008).  When deciding whether to apply the

4   doctrine, a court considers:  "(1) whether a party's later position is clearly inconsistent with its

5   original position; (2) whether the party has successfully persuaded the court of the earlier position;

6   and (3) whether allowing the inconsistent position would allow the party to derive an unfair

7   advantage or impose an unfair detriment on the opposing party."  *Id.* (internal quotation marks and

8   citation omitted).  "[J]udicial estoppel seeks to prevent the deliberate manipulation of the courts, and

9   therefore should not apply when a party's prior position was based on inadvertence or mistake."  *Id.*

10  (internal quotation marks and citation omitted).

11      The Court concludes that judicial estoppel is not warranted in *Nisenan*.  The fact that

12  Defendants did not assert the statute of limitations in *Hardwick* is not "inconsistent" with their

13  assertion of the defense in a different case filed thirty years later.  *Hardwick* was a class action

14  involving numerous rancherias and tribes.  The record does not disclose why the statute of

15  limitations was not raised as a defense.  *Hardwick* ultimately settled, and the statute of limitations

16  never was addressed by the Court.  In contrast, Defendants asserted the statute of limitations at the

17  first available opportunity in *Nisenan*.  The Court is at a loss to understand how Defendants'

18  assertion of a limitations defense in *Nisenan* allows Defendants to "derive an unfair advantage" over

19  Plaintiffs.

20      It is clear from this record that Plaintiffs have a deep and sincere desire to regain federal

21  recognition of Indian status.  However, the *Nisenan* action – filed more than forty years after

22  termination of the Nevada City Rancheria and more than seventeen years after *Hardwick* was closed

23  – simply was filed too late.  "Statutes of limitation are primarily designed to assure fairness to

24  defendants and to promote the theory that 'even if one has a just claim it is unjust not to put the

25  adversary on notice to defend within the period of limitation and that the right to be free of stale

26  claims in time comes to prevail over the right to prosecute them.'"  *Albillo-De Leon v. Gonzales*,

27  410 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428

28  (1965)).

1

**V. ORDER**

2

Accordingly, and good cause therefor appearing,

3

(1) the motion to correct a clerical mistake in *Hardwick* is GRANTED;

4

(2) the motion to augment the record in *Nisenan* is GRANTED;

5

(3) the motion for judgment on the pleadings in *Nisenan* is GRANTED without leave to

6

    amend; and

7

(4) the *Nisenan* action is DISMISSED WITH PREJUDICE.

8

9

DATED:  March 7, 2014

10

                                      _____

11

                                  JEREMY FOGEL

                                  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

13