**OCOTILLO LAW & POLICY PARTNERS, LLP**
PADRAIC I. MCCOY (SBN 223341)
 E-Mail: McCoy@OLP-Partners.com
6650 Gunpark Drive, Suite 100
Boulder, Colorado 80301
Telephone: (303) 500-7756
Facsimile: (303) 558-3893

Attorneys for Movant, THE BUENA VISTA RANCHERIA
OF ME-WUK INDIANS, A FEDERALLY RECOGNIZED
INDIAN TRIBE

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TILLIE HARDWICK, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br><br> UNITED STATES OF AMERICA, ET AL., <br><br> Defendants. | Case No.: 5:79-CV-01710 <br><br> DATE: <br> TIME: <br> COURTROOM: UNITED STATES DISTRICT COURT, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA 95113 <br><br> **THE BUENA VISTA RANCHERIA OF ME-WUK INDIANS NOTICE OF MOTION AND MOTION TO ENFORCE THE 1983 STIPULATED JUDGMENT** |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on _____, 2020, at

_____, or as soon thereafter as the matter may be heard in the United States District Court,

280 South First Street, San Jose, California, 95113, a hearing will be held regarding this

motion, by and through counsel, on behalf of the Buena Vista Rancheria of Me-Wuk Indians

for an order requiring the Department of the Interior, Bureau of Indian Affairs, to accept title

in trust to the Rancheria lands pursuant to the 1983 Stipulated Judgment in this case. The

bases for this motion are set forth fully below.

***Relief Requested***:  The Buena Vista Rancheria of Me-Wuk Indians respectfully moves this Court for an order requiring the Department of the Interior, Bureau of Indian Affairs, to accept title in trust to the Rancheria lands pursuant to the 1983 Stipulated Judgment in this case.

# TABLE OF CONTENTS

I. STATEMENT OF RELIEF REQUESTED ............................................................5

II. BRIEF INTRODUCTION AND STATEMENT OF ISSUES ...............................5

III. JURISDICTIONAL STATEMENT ......................................................................6

IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................7

    A.      Establishment of the Buena Vista Rancheria ..........................................7

    B.      The Rancheria's Termination ..................................................................8

    C.      This Case and the Rancheria's Restoration ............................................8

    1. This Litigation ..........................................................................................8
    2. The 1983 Stipulated Judgment ................................................................9
    3. The 1987 Stipulated Judgment ..............................................................10

    D.      Subsequent Collateral Attacks on the 1983 and 1987 Judgments ..........11

        1. Amador County v. United States. ........................................................11

        2. The Friends of Amador County v. United States. .................................13
        3. The County Property Tax Dispute. ......................................................14
        4. NPDES Permit. ...................................................................................15

    E.      Two Elections for Mandatory Trust and the BIA's Non-Decision
        Decision ..................................................................................................16

        1. The 1996 Election to Restore the Rancheria Lands. ...........................16
        2. The 2010 Election to Restore the Rancheria Lands. ...........................16
        3. The Non-Decision Decision. ...............................................................19

V. ARGUMENT ...................................................................................................21

    A.      Introduction ............................................................................................21

    B.      The 1983 Stipulated Judgment ..............................................................22

    C.      The BIA Lacks Discretion Not to Acquire Title to the Rancheria in Trust
        ..............................................................................................................23

VI. CONCLUSION ................................................................................................25

## TABLE OF AUTHORITIES

Cases

33 IBIA 135 (1999)..................................................................................................23, 24
*Amador County, Cal. v. Salazar, et al.*, 640 F.3d 373 (D.C. Cir. 2011)..............................12
*Amador County, California v. Kempthorne, et al.*, 592 F.Supp.2d 101 (D. D.C. 2009). ....11
*Buena Vista Rancheria of Me-Wuk Indians of California v. Acting Pacific Regional
    Director, Bureau of Indian Affairs*, 66 IBIA 214 (2019)................................................19
*Carcieri v. Salazar*, 555 U.S. 379 (2009). .....................................................................22
*Cty. of Amador, California v. United States Dep't of the Interior*, 136 F. Supp. 3d 1193
    (E.D. Cal. 2015), aff'd sub nom. *Cty. of Amador v. United States Dep't of the Interior*,
    872 F.3d 1012 (9th Cir. 2017) ..........................................................................................7
*Envtl. Protection Info. Center v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001) ......23
*Estate of Isgrigg Towendolly*, 50 IBIA 206, 211, 215 (2009) .............................................23
*Friends of Amador County v. Jewell*, 135 S.Ct. 717 (2014) ...............................................14
*Friends of Amador County v. Jewell*, No. 14-340, 2014 WL 4748556, *18 (2014)............13
*Friends of Amador County v. Salazar*, 554 Fed.Appx. 562 (9th Cir. 2014). ......................14
*Friends of Amador Cty. v. Salazar,* No. CIV. 2:10-348 WBS, 2011 WL 4709883, at *4
    (E.D. Cal. Oct. 4, 2011), aff'd, 554 F. App'x 562 (9th Cir. 2014)...................................14
*Froelich v. Acting Great Plains Regional Director*, 51 IBIA 173, 173 (2010). .................20
*Merrifield v. Acting Pacific Regional Director*, 62 IBIA 52, 52 (2015)..............................20
*Nat. Res. Def. Council v. Salazar*, 686 F.3d 1092, 1104 (9th Cir. 2012), on reh'g en banc
    sub nom. *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776 (9th Cir. 2014)......................23
*Protect the Peninsula's Future v. Northwest Regional Director*, 57 IBIA 225, 226 (2013).
    ..........................................................................................................................................20
*Seminole Nation v. United States*, 316 U.S. 286, 296–97 (1942) ........................................6
*Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir. 1995) ..............................................23
*Yakama Nation v. Northwest Regional Director*, 52 IBIA 262, 263 n.2 (2010).................20

Statutes

18 U.S.C. § 1151 ..............................................................................................10, 14, 16
1958 "California Rancheria Act," Pub. L. 85-671 at 72 Stat. 619, amended in 1964 by 78
    Stat. 390 ..............................................................................................................................8
25 U.S.C. § 465 ....................................................................................................................22
25 U.S.C. 2703(4)(A).....................................................................................................11, 12
34 Stat. 325-328 .....................................................................................................................7
35 Stat. 70-76 .........................................................................................................................7
The Indian Reorganization Act,' 48 Stat. 985, 25 U.S.C. § 465 as amended by section 203
    of the Indian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat. 1512 ..............10

Other Authorities

BIA Mandatory Trust Handbook .........................................................................................17
Handbook at 25 .....................................................................................................................25
*National Indian Gaming Commission*, *Indian Lands Opinion*, June 30, 2005 .....................8
Parker, Phil, The BIA is Broken [2014 Update] (March 18, 2014). Available at SSRN:
    https://ssrn.com/abstract=1950699 or http://dx.doi.org/10.2139/ssrn.1950699 ..............24

Regulations

25 CFR 151 ...............................................................................................................5, 17, 22
69 Fed. Reg. 76,004 (2004).................................................................................................11
73 Fed. Reg. 29375 (May 20, 2008). ..................................................................................12

## I. STATEMENT OF RELIEF REQUESTED

Pursuant to the express provisions of paragraphs 6, 8, and 12 of the 1983 Stipulated Judgment in this case ("1983 Judgment"), the Buena Vista Rancheria of Me-Wuk Indians hereby moves this Court to enter the Proposed Order requiring the Bureau of Indian Affairs ("BIA") to accept title to the restored Rancheria lands in trust without delay.

## II. BRIEF INTRODUCTION AND STATEMENT OF ISSUES

The Buena Vista Rancheria and the United States settled this case thirty-seven thirty years ago. The 1983 Judgment requires the BIA to restore to trust status the unlawfully terminated Rancheria lands. The 1983 Judgment's mandatory trust provisions spared the parties from having to navigate BIA's uncertain and often protracted discretionary fee-to-trust process set out at 25 CFR 151. In 1996, the Tribe asked BIA to return to trust status the single parcel of land making up the restored Rancheria. The BIA denied the request and erroneously advised Buena Vista that the request was required to undergo the part 151 process—as if the litigation and 1983 Judgment had no impact on the matter.

In 2010, the Tribe again asked the BIA to acquire title to the restored Rancheria in trust under the express mandatory trust provisions of the 1983 Judgment. Rather than grant or deny the request, the BIA and various offices within the Department of Interior ("DOI") endlessly bounced this matter back and forth for ten years of interminable confusion and delay. Recently, BIA denied the application in a decision that it purports cannot be appealed, and invited Buena Vista to file an entirely new application, presumably under part 151, which is entirely inapplicable. The Tribe has been made to suffer the BIA's relegation of its rights

under the 1983 Judgment for years, and is now being asked to endure a new process that contains no apparent clarity with little hope of ending this years-long bureaucratic failure.[1]

After years of attempted cooperation with the BIA, Buena Vista now seeks an order enforcing the express provisions of the 1983 Judgment. This motion is brought on the grounds that, among other sections, Paragraph 8 of the 1983 Judgment expressly requires BIA to restore the Rancheria lands to trust status upon Buena Vista's election. Nothing else is required and no time limit applies to the election. The BIA's refusal to accept Buena Vista's mandatory-trust application is in clear violation of the 1983 Judgment. Buena Vista now asks this Court to order BIA to comply with the 1983 Judgment and accept the Rancheria lands into trust without delay.

## III.    JURISDICTIONAL STATEMENT

This Court has retained jurisdiction for precisely the purpose for which the Rancheria makes this request. The 1983 Judgment provides as follows:

> For the purpose of resolving any disputes which arise among the parties in the course of implementing the judgment to be entered pursuant to this stipulation, or for extending the time within which any act may or must be performed under this Stipulation, the Court shall retain jurisdiction over this matter for a period of two (2) years from entry of judgment, or for such longer time as may be shown to be necessary on a duly-noticed motion by any party.

1983 Judgment, ¶ 12.

---

[1] Beyond violation of the 1983 Stipulated Judgment, DOI and BIA have unquestionably failed to execute their fiduciary obligations. *See Seminole Nation v. United States*, 316 U.S. 286, 296–97 (1942) (holding that the Government, in dealings with Indian tribes, must conduct itself "with moral obligations of the highest responsibility and trust" and will be "judged by the most exacting fiduciary standards"). *See infra* regarding the "broken" status of the BIA, especially with regard to acquiring title in trust to Indian lands – which necessitates the order requested here.

Further, as this Court has previously stated, "[t]here is no question that the Court has continuing jurisdiction to resolve disputes arising from the stipulated judgments. The 1983 Stipulated Judgment expressly retained jurisdiction for 'a period of two years from entry of judgment or for such longer time as may be shown to be necessary on a duly-noticed motion by any party.'" (Doc. 285, May 20, 2004, Order Denying the Madera County Defendants' Motion for Enforcement of Judgment, pp. 4:27-5:2.) The immediate motion addresses a dispute arising from the 1983 Judgment. As demonstrated below, it is necessary for the Court to enforce the terms of the 1983 Judgment because BIA is unwilling or unable to do so. As a result, the Court possesses jurisdiction here.

IV. <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

A. **Establishment of the Buena Vista Rancheria**

Ancestors of the Buena Vista Rancheria of Me-Wuk Indians have occupied what is now Amador County and the surrounding environs for thousands of years. Despite generations of abuse, neglect, the Mission period, the Gold Rush, and destructive federal policies toward Indian tribes, the Me-Wuk Indians survived. In the early 20th Century, the United States created a network of small land parcels called "Rancherias" for landless Indian tribes in California. The United States purchased the lands constituting the Buena Vista Rancheria in 1927 with money appropriated by the Acts of June 21, 1906 (34 Stat. 325-328), and April 30, 1908 (35 Stat. 70-76). The government's purchase was intended to establish the Rancheria as a reservation for the Tribe to be held in trust for the benefit of the Tribe and its members. *See Cty. of Amador, California v. United States Dep't of the Interior*, 136 F. Supp. 3d 1193, 1201 (E.D. Cal. 2015), aff'd sub nom. *Cty. of Amador v. United States Dep't of the Interior*, 872 F.3d 1012 (9th Cir. 2017) (citing AR900; ECF No. 65 at 16).

## B.  The Rancheria's Termination

As an outgrowth of the 1950s federal "termination" era, during which the government disestablished the legal status of many Indian tribes across the country, Congress enacted the 1958 "California Rancheria Act," Pub. L. 85-671 at 72 Stat. 619, amended in 1964 by 78 Stat. 390 (the "Termination Act").  The Termination Act disestablished many California Indian Rancherias, including the Buena Vista Rancheria, and terminated the legal status of the related Indian tribes and their members as Indians under federal law.  Regarding Buena Vista, the United States distributed the Rancheria lands (a single 67.5-acre parcel) to two Buena Vista Indians, Louis and Annie Oliver.  *See National Indian Gaming Commission*, *Indian Lands Opinion*, June 30, 2005 ("*NIGC Opinion*"), at 3.  The Termination Act withdrew the trust status of the Rancheria parcel and dissolved the Rancheria boundaries.  *Id.*

The Termination Act required the United States to improve or construct roads serving the terminated Rancheria lands, to upgrade the related irrigation, sanitation, and domestic water systems, and to provide certain educational and other benefits and services to the terminated Tribe and its members.  The government failed to fulfill its commitments and this litigation ensued.

## C.  This Case and the Rancheria's Restoration

1.  <u>This Litigation.</u>  In 1979, the Indian residents of seventeen terminated Rancherias joined in this lawsuit (which became a class action and joined the affected counties) against the United States to restore the reservation status of the affected lands, and to "'unterminate' each of the subject Rancherias, and . . . to hold the same in trust" for the Indians of the Rancherias.  The parties settled the litigation through court-approved stipulated judgments.  The first judgment, the 1983 Judgment, was executed between the plaintiffs,

including Buena Vista, and the United States. The second set of judgments was executed between 1985 and 1987 between certain tribes and the counties where those tribes and Rancherias were and are located.

2. The 1983 Stipulated Judgment. The 1983 Judgment, executed by the United States and the attorney for all named plaintiffs, including the Buena Vista Rancheria, accomplished several related goals to restore the plaintiff tribes and individual Indians to their pre-termination status. First, the stipulation certified a plaintiff class "consisting of all those persons who received any of the assets of the rancherias . . . pursuant to the California Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect to any real property they received as a result of the implementation of the California Rancheria Act." 1983 Judgment, ¶ 2. It then restored the individual Indian plaintiffs to their status as Indians under federal law, *Id.* at ¶ 3, restored the recognized status of the seventeen plaintiff Indian tribes, and required the United States to add the restored tribes to the BIA's Federal Register list of recognized Indian tribes. *Id.* at ¶ 4. Additionally, the 1983 Judgment required that the restored Indian tribes "shall be deemed entitled to any of the benefits or services provided or performed by the United States for Indian Tribes, Bands, Communities or groups because of their status as Indian Tribes, Bands, Communities or groups." *Id.*

Most notably here, the 1983 Judgment contains three separate paragraphs each requiring the Secretary to accept title to terminated reservation lands back into trust upon the owner's election. In paragraph 6, the stipulation requires as follows:

> Any named individual plaintiff or class member who received or presently owns fee title to an interest in any former trust allotment by reason of the distribution of the assets of any of the Rancherias listed in paragraph 1 shall be entitled to elect to restore any such interest to trust status, to be held by the United States for the benefit of such Indian person(s).

*Id.* at ¶ 6.  Paragraph 8 of the stipulation contains another similar provision:

> Any named individual plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria, authority for the acceptance of said conveyances being vested in the Secretary of the Interior under section 5 of the Act of June 18, 1934, 'The Indian Reorganization Act,' 48 Stat. 985, 25 U.S.C. § 465 as amended by section 203 of the Indian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat. 1512 and/or the equitable powers of this court.

*Id.* at ¶ 8.  Notably, no time limit applies to the application of the mandatory trust provisions of paragraphs 6 or 8.  The stipulation contains a third mandatory trust provision:

> Within two years of date of notice of this judgment, as provided in paragraph 9, the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in paragraph l that are recognized by the Secretary of the Interior pursuant to paragraph 4 herein may arrange to convey to the United States all community-owned lands within their respective rancherias to which the United States issued fee title in connection with or as the result of the distribution of the assets of said rancherias, to be held in trust by the United States for the benefit of said Tribes, Bands, Communities or groups, authority for the acceptance of said conveyances being vested in the Secretary of Interior under section 5 of the Act of June 18, 1934, 'The Indian Reorganization Act,' 48 Stat. 985, 25 U.S.C. § 465 as amended by section 203 of the Indian Land Consolidation Act. Pub. L. 97-459, Title II, 96 Stat. 2515 and/or the equitable powers of this court.

*Id.* at ¶ 7.

3.     <u>The 1987 Stipulated Judgment.</u> The Buena Vista Rancheria and Amador County, including its tax collector, County Assessor, and County Board of Supervisors (added as defendants), entered into a second stipulation in 1987 pursuant to which this Court declared that the Rancheria was "never and [is] not now lawfully terminated."  1987 Judgment at ¶ 2. The Judgment ordered the Rancheria's original boundaries "hereby restored," and further declared that "all land within these restored boundaries is declared to be 'Indian country'" (as defined by 18 U.S.C. § 1151).  *Id.* at ¶ 2(C).  The 1987 Judgment further requires the

United States and the County to treat the Rancheria "as any other federally recognized Indian Reservation, and all of the laws of the United States that pertain to federally recognized Indian Tribes and Indians" shall apply to the Rancheria. *Id.* at ¶ 2(D).

### D. Subsequent Collateral Attacks on the 1983 and 1987 Judgments

1.     <u>Amador County v. United States.</u>   Because the Rancheria lands are not held in trust, the Tribe has been made to defend the Rancheria and the Tribe's rights thereon against multiple attacks, including by Amador County itself, who is a defendant in this suit and subject to the 1987 Judgment.   In anticipation of a potential tribal gaming facility to be constructed on the restored Rancheria, in 2000 the Tribe and the State of California entered into a tribal-state gaming compact under the Indian Gaming Regulatory Act ("IGRA"), which they amended in August of 2004 (the "Compact Amendment").   The Compact Amendment was deemed approved under IGRA and the Secretary of the Interior published notice of the Compact Amendment's approval in the Federal Register on December 20, 2004.   69 Fed. Reg. 76,004 (2004).   Despite its clear settlement in the 1987 Judgment and agreement therein to treat the Rancheria "as any other federally recognized Indian reservation," on April 1, 2005 (months after the Tribe commenced the casino financing process), Amador County challenged the reservation status of the restored Rancheria lands.

The County sued the United States to invalidate the Compact Amendment, arguing, incredibly, that the Buena Vista Rancheria is not an Indian reservation under federal law. *Amador County, California v. Kempthorne, et al.*, 592 F.Supp.2d 101 (D. D.C. 2009).[2]   The

---

[2] IGRA defines "Indian lands" (where a tribe may conduct gaming activities) to include all lands within the limits of an Indian reservation.  25 U.S.C. 2703(4)(A).  IGRA does not define "Indian reservation," thus deferring to that term's

Tribe did not become a party to the suit. Shortly after the suit was filed, the National Indian Gaming Commission ("NIGC") confirmed the Rancheria's status as Indian lands under IGRA.[3]

Almost four years after the County filed the complaint, the District Court dismissed the case on January 8, 2009, for failure to state a claim (holding that the Secretary's "no-action" approval was committed to agency discretion by law) and the County appealed. The Court of Appeals for the D.C. Circuit remanded the case on February 25, 2011, holding the Secretary's "no-action" approval method reviewable. *Amador County, Cal. v. Salazar, et al.*, 640 F.3d 373 (D.C. Cir. 2011). Finally, after nearly eleven years of procedural wrangling and gamesmanship by the County,[4] the District Court granted the United States' motion for summary judgment on March 16, 2016. The County appealed the matter to the D.C. Circuit Court of Appeals, which affirmed the District Court's decision on November 27, 2017, without oral argument. The County requested a rehearing *en banc* before the D.C. Circuit Court of Appeals, which the court denied on January 3, 2018. The County did not petition

---

common law definition, which clearly includes the Rancheria. In 2008, the Department of Interior published regulations to implement portions of IGRA, in which the Department defined "reservation" to include "Land of Indian colonies and rancherias (including rancherias restored by judicial action) set aside by the United States for the permanent settlement of the Indians as its homeland." (emphasis added) 73 Fed. Reg. 29375 (May 20, 2008).

[3] In response to the Tribe's May 17, 2000 and December 29, 2004 requests for an "Indian lands" determination by the NIGC (both prior to the County lawsuit), the NIGC issued a written opinion on June 30, 2005, confirming the Rancheria's "Indian lands" status under IGRA. The NIGC Opinion reviewed the history of the Buena Vista Rancheria, the Termination Act, and the 1983 and 1987 Judgments restoring the Tribe and Rancheria. It concluded that the Rancheria parcel falls within the limits of an Indian reservation and therefore "meets the definition of Indian lands under IGRA, 25 U.S.C. § 2703(4)(A)." The Department of the Interior, Office of the Solicitor, concurred in the determination.

[4] The Tribe was not able to proceed with the gaming facility project while the litigation was pending.

the United States Supreme Court for certiorari review and the March 16, 2016, decision and denied appeal thereof remain intact.

2. <u>The Friends of Amador County v. United States.</u> On February 10, 2010, a group calling itself the Friends of Amador County ("FOAC") sued the United States in the District Court for the Eastern District of California. The FOAC suit raised the same basic issues the County raised in its suit (*e.g.*, that the Rancheria is not "Indian lands" under IGRA because the land is not held in trust or a reservation) but also challenged the Tribe's recognized status. For example, at paragraph 9 of the 52-page complaint, FOAC alleged that the Secretary unlawfully approved the Compact Amendment because the Rancheria "is owned in fee simple. That land is not eligible for either class II or class III gaming. That land is owned by a putative and improperly recognized or acknowledged 'tribe' of Indian claimants calling themselves the 'Buena Vista Rancheria of Me-Wuk Indians.'" (Complaint, ¶ 9). FOAC also variously and repeatedly referred to the Rancheria as "ineligible fee land" (*Id.* at ¶ 10), and made similar statements to the effect that the Rancheria was not "Indian lands" because it is not held in trust. *See also* "FOAC Petition for Writ of Certiorari," *Friends of Amador County v. Jewell*, No. 14-340, 2014 WL 4748556, *18 (2014).

The federal defendant in *FOAC* failed to move to dismiss the case. The Tribe was forced to enter a special appearance in the action to safeguard its rights. On November 4, 2011, it entered a special appearance to seek dismissal under Federal Rule of Civil Procedure 19 ("Rule 19") for failure to join the Tribe as a required party. Only the Tribe and State of California are parties to the Compact Amendment being challenged in the suit, and a positive outcome for the plaintiff would have worked a substantial and obvious detriment to the Tribe relative to the Rancheria and its reservation status. The District Court unequivocally

dismissed the action under Rule 19, finding that the Tribe was required because, in its absence, the federal defendants were not sufficiently defending the Tribe's legally-protected interests, which would be impaired or impeded if the suit continued:

> The Federal Defendants' litigation policy in this case appears to favor judicial review and to avoid taking positions that may conflict with its national Indian policy. Their failure to move this court to dismiss this case and their refusal to take a position on this motion appears to conflict with the Tribe's interest in protecting their tribal status and not having their interests litigated in their absence.

*Friends of Amador Cty. v. Salazar,* No. CIV. 2:10-348 WBS, 2011 WL 4709883, at *4 (E.D. Cal. Oct. 4, 2011), aff'd, 554 F. App'x 562 (9th Cir. 2014). The Tribe's interests included:

> [its] substantial interest in the already-determined "Indian lands" status of its Rancheria, its ability to govern that land, its ability to enforce its laws, its status as a federally-recognized Indian tribe, the two stipulated judgments that restored the Tribe and Rancheria, and its sovereign immunity not to have its interests adjudicated without its consent.

*Id.* at 3. The court then found that the Tribe could not be joined, absent its consent, due to tribal sovereign immunity, and dismissal was required. *Id.*

FOAC appealed to the Ninth Circuit. The appeal was denied on January 29, 2014. *Friends of Amador County v. Salazar*, 554 Fed.Appx. 562 (9th Cir. 2014). FOAC then petitioned the United States Supreme Court for writ of certiorari on September 18, 2014. The petition was denied and the FOAC litigation finally concluded on December 1, 2014. *Friends of Amador County v. Jewell*, 135 S.Ct. 717 (2014).

3. <u>The County Property Tax Dispute.</u> Again because the Rancheria is not held in trust, and despite the fact that all land within the Rancheria boundaries is declared to be "Indian country" within 18 U.S.C. § 1151 (1987 Judgment at ¶ 3(C)), Amador County has sought to impose property taxes against the Tribe and has threatened to sell the land if the taxes remain unpaid. On May 4, 2004, the Tribe received a letter from the Amador County

Tax Assessor stating that the Rancheria is held in fee and is therefore assessable. Declaration of Rhonda Morningstar Pope-Flores in Support of the Buena Vista Rancheria's Motion to Enforce the 1983 Stipulated Judgment ("Pope Decl.") ¶ 9. In 2010, the Tribe received a "Notice of Tax Collector's Impending Power to Sell." *Id.* There, the County threatened to sell the Rancheria if the Tribe did not pay the County taxes. *Id.* The County still lists the Rancheria as subject to tax and foreclosure sale. *Id.* Given the Tribe's recent completion of its casino facility on the Rancheria (and the substantial increase in the land's improved value), the County may re-assert its position regarding property taxes. *Id.* Although the County's unending efforts to relegate the Tribe are inexcusable, they would be more securely prevented had the BIA accepted the Rancheria land into trust as required.

4. <u>NPDES Permit.</u> Despite its stipulation of the 1987 Judgment, the County has continued to challenge the Rancheria's reservation status because the land remains in fee. In opposing the Tribe's 2014 application to EPA for renewal of a National Pollutant Discharge Elimination System ("NPDES") permit under the Clean Water Act, the County argued that the Buena Vista Rancheria is not a reservation, was not allotted lands, and is not Indian Country (despite its entry into the stipulated judgment here). Pope Decl. ¶ 14 (emphasis added). EPA thoroughly rejected the County's argument, citing the 1983 Stipulated Judgment, the 1987 Stipulated Judgment, and the NIGC's Indian lands determination. *Id.*

The County also sought to leverage its litigation against the Tribe to delay renewal of the NPDES permit, arguing that, "[i]n light of the ongoing litigation between Amador County and the Department of the Interior regarding the status of the Rancheria, the EPA should, at a minimum, postpone any action on this permit until after the federal court has ruled on the underlying jurisdictional issue." *See Id.* EPA rejected this ploy outright, stating that it was

"under no obligation" to postpone renewal and that doing so would risk proper control of wastewater discharge. *Id.*

### E. Two Elections for Mandatory Trust and the BIA's Non-Decision Decision

1.      <u>The 1996 Election to Restore the Rancheria Lands.</u>  In 1996, the Tribe's then-principal spokesperson made a mandatory trust election under the 1983 Judgment.  Pope Decl. at ¶ 4.  Mistakenly, the BIA returned the deed unaccepted and cited the need for compliance with the BIA's discretionary fee-to-trust procedures at 25 CFR Part 151.  *Id.* at ¶ 6.  At the time, the Tribe lacked the resources and representation to know that BIA had made a mistake in returning the deed.  *Id.*

2.      <u>The 2010 Election to Restore the Rancheria Lands.</u>  On July 7, 2010, Buena Vista met with the BIA Regional Office and made an in-person request that BIA restore to trust the Rancheria lands pursuant to the 1983 Judgment.[5]  Pope Decl. ¶ 16.  The Tribe explained clearly that restoration was mandatory and would satisfy the United States' obligations under the 1983 Judgment.  *Id.*  It also explained that the mandatory trust acquisition would render moot the two lawsuits described above (*Amador County v. United States* and *Friends of Amador County v. United States*), each of which was based on the Rancheria's fee status or would have been resolved by a conveyance of the Rancheria lands into trust.  *Id.*  At the 2010 meeting, BIA Regional Office staff and leadership responded in apparent agreement that the conveyance was mandatory under the 1983 Judgment.  *Id.*  Thereafter, on BIA's express

_____

[5] As background, BIA Regional informed Buena Vista early on not to deliver a written request for the trust conveyance for fear that the request would get automatically routed through BIA's realty division and treated as a 151 application, instead of as mandatory trust.  Pope Decl. ¶ 16.

recommendation, counsel began working with the DOI Regional Solicitor's office and others to satisfy what BIA described as merely ministerial items required prior to acceptance of the Rancheria deed into trust. *Id.*

The BIA Regional Office referred Buena Vista to the BIA Mandatory Trust Handbook and its list of pre-acquisition "requirements." Pope Decl. ¶ 17. Although the Tribe maintained the position that the acquisition was mandatory, and thus the BIA's requirements could not prevent the conveyance, Buena Vista spent nearly eight years attempting to satisfy the BIA's "ministerial" requirements. *See Id.* ¶ ¶ 17-20. For instance, the BIA required Buena Vista to obtain title insurance from a commercial title company prior to conveyance of the deed. *Id.* at ¶ 18. This task proved nearly impossible because the BIA made continuous objections and comments to the draft title policies. *Id.* Eventually, due to factors beyond the Tribe or BIA's control, with very little exception, commercial title companies have ceased providing title policies regarding Indian lands. *Id.* Buena Vista's request was consistently ignored or delayed, or BIA would propose a new process for addressing the request. *Id.* at ¶¶ 20-30.

For example, after working with the BIA Regional Office for more than two years on the 2010 request, in 2012 the BIA Regional Office informed Buena Vista suddenly that the request would now need to be addressed by the Central office of Indian Affairs within the Department of the Interior in Washington, D.C. *Id.* at ¶ 26. The BIA explained that, since the Tribe had announced plans to build a casino on the Rancheria in the future, the BIA's Fee-To-Trust Handbook required the request to be treated as a "gaming application," to which BIA's discretionary fee-to-trust applications under 25 CFR 151 would apply. *Id.* Buena Vista responded that this was a mandatory trust request under the 1983 Judgment and

that, since the gaming portion of the Rancheria was on-reservation, it was already clearly gaming-eligible, as the NIGC had determined in 2005. *Id.* at ¶ 32. The Office of Indian Gaming ("OIG") within the Assistant Secretary-Indian Affairs' office (with whom the Tribe came to work primarily on this matter) eventually explained that, while these points are true, the Department had serious concerns that the acquisition might be controversial and that, "politically," the Department needed to be careful about how to process the request. *Id.* at ¶ 32. Highly frustrated but concerned about the potential cost and delay of litigation, and confident of the equities, Buena Vista continued to work with various offices within the Department for years, always being led to believe that resolution was close at hand. *Id.*

Buena Vista had several meetings and phone calls over eight years with various personnel within the Department. *Id.* at ¶¶ 21-45. Buena Vista met with multiple Assistant Secretaries of Indian Affairs ("Assistant Secretary") themselves, and their staff, including Assistant Secretaries Larry Echohawk, Del Laverdure (acting), Kevin Washburn, and Larry Roberts (acting). *Id.* at ¶¶ 21-44. Mr. Echohawk told Buena Vista during an in-person meeting in his office that Indian Affairs was "ready to do its part." *Id.* at ¶ 21. Yet nothing ever materialized. One Assistant Secretary asked Buena Vista, rhetorically, if it believed "he had a magic wand" to grant the request. *Id.* at ¶ 30. One Assistant Secretary explained to Buena Vista's Tribal Chairperson that acquisition of the Rancheria parcel would cost the Department "political capital," implying that the Department was highly unlikely to expend such capital for a small California Rancheria tribe. *Id.* at ¶ 30. While such factors might (or might not) be relevant and proper with respect to a discretionary fee-to-trust application under Part 151, this was a mandatory trust election under the 1983 Judgment, and consideration of such factors is wholly outside the Department's scope and authority.

3.     <u>The Non-Decision Decision.</u>  Eight years, three months, and thirteen days after Buena Vista delivered to BIA the written mandatory trust election, on October 15, 2018, Buena Vista received a letter from the BIA Regional Office dated October 10, 2018 (the "Decision").  Pope Decl. at ¶ 45.  The Decision denied Buena Vista's July 2, 2010, request.  *Id.*  It explained that "[o]n August 7, 2018, it was determined that the subject property was not eligible to be brought into trust under the mandatory provisions and will have to be resubmitted to be processed as a discretionary application.  Therefore, we are returning, in its entirety, all information submitted to our office for the requested action and closing out our file.  The Tribe is free to submit a new complete application at any time in the future."  *Id.*

Following what Buena Vista believed to be proper procedure (although aware that the Decision appeared procedurally infirm), on November 13, 2018, it appealed the Decision to the Interior Board of Indian Appeals ("IBIA").  *Id.* at ¶ 46.  Buena Vista argued in the appeal that BIA was obligated to accept the Tribe's mandatory trust application pursuant to the 1983 Judgment.  *Buena Vista Rancheria of Me-Wuk Indians of California v. Acting Pacific Regional Director, Bureau of Indian Affairs*, 66 IBIA 214 (2019).  On November 20, 2018, the IBIA issued a Pre-Docketing Notice, Order to Complete Service, Order Concerning Statement of Reasons, Order for Information from the Regional Director, and Order for the Administrative Record.  *Id.*  On April 18, 2019, the BIA Regional Solicitor filed a Notice of Appearance and Request for voluntary remand.  *Id.*  Buena Vista opposed the request, but the IBIA remanded the matter to the BIA on April 25, 2019.  *Id.*  The IBIA stated as follows:

> As a general rule, the Board will grant a BIA regional director's motion for a voluntary remand.  *See, e.g., Merrifield v. Acting Pacific Regional Director*, 62 IBIA 52, 52 (2015).  In addition, ordinarily, when the Board grants a voluntary remand, it will

vacate the underlying BIA decision that is being appealed. *See, e.g., Yakama Nation v. Northwest Regional Director*, 52 IBIA 262, 263 n.2 (2010). The Board has recognized that a BIA official has a broad right to seek a remand to permit further consideration of a matter and issuance of a new decision. *See, e.g., Protect the Peninsula's Future v. Northwest Regional Director*, 57 IBIA 225, 226 (2013). We have held that BIA need not justify a request for a voluntary remand. *See, e.g., Froelich v. Acting Great Plains Regional Director*, 51 IBIA 173, 173 (2010).

The Board grants the Regional Director's request and, consistent with the Board's practice, vacates the Decision before sending the matter back for further consideration. **On remand, the Regional Director shall consider and address, as appropriate, the issues and arguments raised by the Tribe in its notice of appeal.**

66 IBIA 214 at 1-2 (emphasis added).

The BIA chose not to meaningfully consider and address the issues and arguments raised by Buena Vista in its appeal to the IBIA. The Tribe and undersigned counsel met with the BIA Regional Office on May 23, 2019, by telephone conference. *Id.* at ¶ 47. During that meeting, the Regional Director explained that the Decision (the letter issued by the BIA in 2018) was not a final, appealable decision.[6] *Id.* She explained that her office was too time-efficient in delivering the letter Buena Vista received, and that the letter was not an actual decision. *Id.* She instructed Buena Vista to meet with OIG or the Assistant-Secretary's office to explore the matter further. *Id.* She indicated that Buena Vista should work with OIG or the Assistant Secretary to arrange a process for reaching a final, appealable decision. *Id.* The Regional Director was unable to offer any certainty regarding the timing, requirements, or process for obtaining a final decision. *Id.*

---

[6] For informational purposes, the longtime Regional Director of the BIA Pacific Region is a member of the Ione Band of Miwok Indians, a landless tribe located near the Buena Vista Rancheria. Pope Decl. ¶ 48.

In the remaining months of 2019, and apparently so far in 2020, the BIA has continued to list the Tribe's mandatory trust request as a discretionary fee-to-trust application under Part 151. Pope Decl. at ¶¶ 49-52. And now—apparently for the first time and somewhat shockingly—refers to the Tribe's reservation as the "Former Rancheria." *Id*.

The BIA has had ample time to correctly process and grant its trust application and that the Court should remedy this matter. Through BIA's years of nonaction and its ultimate refusal to grant Buena Vista's request, the United States is in obvious and outright violation of the 1983 Judgment. Buena Vista now moves to enforce its terms.

## V. <u>ARGUMENT</u>

### A. Introduction

The 1983 Judgment contains clear requirements to restore to trust status any Rancheria lands distributed to fee ownership as a result of the Termination Act. Upon termination, the entire Rancheria was distributed as a single parcel in fee to Tribal Chairperson Rhonda Pope Flores's grandparents, which title was then ultimately transferred to the Tribe, where it remains in fee. Pope Decl. ¶ 2. The 1996 and 2010 requests for mandatory trust were improperly denied and the BIA offers no glimmer of hope of reaching any final decision concerning the request. BIA has placed the request into an interminable black box with no realistic hope of completion and has otherwise applied improper factors to the request.

As if the parties had anticipated such disputes, the 1983 Judgment contains a provision expressly allowing this Court to address disputes arising from implementation of the stipulation. Buena Vista now asks this Court to do what BIA has been unwilling to do for

many years: place the land back into trust and finally accomplish a primary goal of this litigation.

## B. The 1983 Stipulated Judgment

Although paragraphs 6, 7, and 8 of the 1983 Judgment (see above) each impose mandatory trust requirements and support Buena Vista's request, paragraph 8 provides the greatest flexibility and is otherwise adequate for these purposes. The Rancheria was Tribal trust land distributed to Buena Vista Indians in fee under the Termination Act and is indisputably covered by paragraph 8. Notably, no time limit applies to a conveyance mandated under paragraph 8 of the 1983 Judgment.

The 1983 Judgment further provides that the authority for Paragraph-8 conveyances is derived from the Indian Reorganization Act ("IRA") Section 5 (25 U.S.C. § 465) "and/or from the equitable powers of [the] court." 1983 Judgment, ¶ 8. Accordingly, Paragraph-8 conveyances are not necessarily IRA Section 5 acquisitions, but are also rooted independently in the equitable powers of federal courts. As discussed below, because the Tribe's application for mandatory trust acquisition is based on the court's equitable powers and not IRA Section 5, it is not necessary for the BIA to apply any portion of Part 151 to the Tribe's request and, in fact, it would be improper to do so.[7]

_____

[7] Buena Vista's request is further not subject to the requirements of IRA Section 5 as interpreted by the Supreme Court in *Carcieri v. Salazar*, 555 U.S. 379 (2009).

### C. The BIA Lacks Discretion Not to Acquire Title to the Rancheria in Trust

The 1983 Judgment imposes on the BIA a legal obligation to accept the Rancheria into trust upon election by the Tribe. Buena Vista having so elected, the BIA cannot impose any requirements or impediments, including any Part 151 procedures. *See Nat. Res. Def. Council v. Salazar*, 686 F.3d 1092, 1104 (9th Cir. 2012), on reh'g en banc sub nom. *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776 (9th Cir. 2014) (holding that an agency lacks discretion if another legal obligation makes it impossible for the agency to exercise discretion); *see also Envtl. Protection Info. Center v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001); *Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir. 1995). The legal obligation imposed on the BIA by the 1983 Judgment is a pre-existing right that makes it impossible for the agency to treat Buena Vista's election with any discretion.

The BIA's lack of discretion here was squarely resolved by the IBIA in *Santana v. Sacramento Area Director*. John Santana, a member of the Cloverdale Rancheria and original distributee of *Hardwick* lands, appealed the BIA Area Director's 1997 decision to process his fee-to-trust request under Part 151. 33 IBIA 135 (1999). The IBIA vacated the BIA decision, holding as follows:

> After carefully reviewing paragraph 8 of the stipulated judgment, the Board concludes that *the only restrictions* placed on requests to restore individually owned distributed lands to trust status are that the class member/owner must elect to convey the distributed lands to the United States to be held in trust.

*Id.* at 141 (emphasis added). According to the IBIA, if a fee-to-trust request is made pursuant to the 1983 Judgment, the discretionary provisions of Part 151 do not apply. *Id*; *see also Estate of Isgrigg Towendolly*, 50 IBIA 206, 211, 215 (2009) (the right pursuant to paragraph

8 is a "right of election" or "option" exercisable at class member's choosing; conversion not automatic upon the Judgment but a class member must make a "request for conveyance").

Related, the IBIA held that no time limit applies to the election. It explained:

The Board finds nothing in the stipulated judgment which places a time limitation on requests to restore individually owned lands to trust status. ***

The Board is not aware of any circumstances under which a deadline for the filing of requests to restore individually owned distributed lands to trust status could have been imposed without court approval. ***

*Id.* at 141.

The *Santana* stipulation is the very same document as the 1983 Stipulated Judgment here. Because the BIA has refused to issue a final decision as to Buena Vista's mandatory trust application, Buena Vista is not allowed to seek similar resolution from the IBIA without waiting for BIA to issue a final decision. As a result, Buena Vista now seeks this Court's order requiring BIA to accept the 67.5-acre parcel into trust without delay.

While BIA's delay here is inexcusable, it is not entirely surprising, given BIA's "broken" status.[8] Yet, surprisingly, the BIA Pacific Regional Office has been able to approve a discretionary fee-to-trust application for the nearby Jackson Rancheria, which was submitted to BIA in only September of 2019. It defies explanation that BIA can approve another tribe's

---

[8] Much has been discussed and written about the vast failures of BIA as an agency. "The Bureau of Indian Affairs (BIA) has been maligned since its inception in 1824. Some have called for its abolishment yet it continues to play a vital role in the lives of millions of Native Americans. Studies by public and private organizations have routinely shown that in many respects the agency is dysfunctional …" Parker, Phil, The BIA is Broken [2014 Update] (March 18, 2014). Available at SSRN: https://ssrn.com/abstract=1950699 or http://dx.doi.org/10.2139/ssrn.1950699. "This investigation demonstrates how the BIA has historically and to this day maintains a culture of operating outside of the rules and regulations it has established for itself. The study is based entirely on documents readily available to the public. It shows a management disregard for policy, process and procedure as well as oversight of those responsible for implementation. It also shows what can only be described as incompetence in the day to day activities of the Bureau. While some of the blame for the failings of this Bureau must be placed on the Congress for failure to adequately fund its activities, in the end, the Bureau has to take responsibility for its own actions." *Id*.

discretionary application in fewer than 6 months (and apparently without any environmental compliance), but that BIA can manage to volley Buena Vista's mandatory acquisition back and forth for 27 years.

**VI.    <u>CONCLUSION</u>**

The 1983 Judgment is intended to resolve litigation between the Tribe and the United States arising from the government's illegal termination of the Tribe and transfer of its Rancheria lands into fee.  A major objective of the litigation was to restore trust status to the Rancheria.  The Rancheria plainly qualifies for a mandatory acquisition under the 1983 Judgment and no time limit applies to the mandatory nature of the conveyance.  As a mandatory acquisition, the conveyance is not subject to the BIA's discretionary fee-to-trust process, and "[t]he Secretary does not have discretion to deny the request."  Handbook at 25.

The Secretary's refusal to accept the Tribe's mandatory-trust application over years-long delay is in clear violation of the 1983 Judgment.  Measured from the time of its first trust-restoration request in 1996, the benefit of its bargain has been withheld from the Tribe for 24 years.  This is a true injustice and the Tribe should not be forced to expend additional time or resources to compel what is already required.  Respectfully, this Court should now order enforcement of the 1983 Judgment.

Dated:  July 10, 2020

Respectfully submitted,


/s *PADRAIC I. MCCOY*
OCOTILLO LAW & POLICY PARTNERS, LLP
Counsel to Buena Vista Rancheria of Me-Wuk Indians