

# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Pacific Regional Office
2800 Cottage Way, Room W-2820
Sacramento, CA 95825

IN REPLY REFER TO:

Rhonda Morningstar Pope, Chairperson
Buena Vista Rancheria of Me-Wuk Indians of California
1418 20th St., Suite 200
Sacramento, CA 95811

Dear Chairperson Morningstar Pope:

On July 2, 2010, the Bureau of Indian Affairs (BIA) received from Buena Vista Rancheria of Me-Wuk Indians of California (Tribe), a request for the trust acquisition of real property commonly referred to as Assessor's Parcel No. 012-100-005 (67 acre Gaming). The Tribe's application indicated that it sought to apply through the mandatory acquisition process, claiming that the subject property was covered by the mandatory duty to acquire land into trust that extends to certain properties and for certain applicants as provided in the Stipulated Order in *Tillie Hardwick, et al. v. United States*, No. C-79-17l0-SW (N.D. Cal. filed Dec. 22, 1983).

On October 10, 2018, we informed you by letter that the subject property was not eligible to be brought into trust under the mandatory provisions, returned your application, and invited you to submit an application for processing under the discretionary acquisition authorities provided in 25 C.F.R. part 151. The Tribe challenged the October 10, 2018 decision through an appeal to the Interior Board of Indian Appeals (IBIA) filed on November 16, 2018. I requested that the IBIA vacate the underlying decision and remand for further consideration, and IBIA granted that request through an order issued on April 25, 2019. *See Buena Vista Rancheria of Me-Wuk Indians of California v. Acting Pacific Regional Director, BIA*, 66 IBIA 214 (Apr. 25, 2019).

This letter provides my final decision and reasoning on the matter. As we concluded in 1996, 2004, and 2018, the BIA does not have the authority under the *Tillie Hardwick* Stipulated Order to acquire the subject property in trust through the mandatory acquisition process. Therefore, we again invite you to submit an application seeking fee-to-trust acquisition through the discretionary process authorized under § 5 of the Indian Reorganization Act and 25 C.F.R. § 151.10.

## I.   BACKGROUND

### A.   The Fee to Trust Process

Statutory authority is required for the United States to accept real property into trust on behalf of Indian individuals or tribes. *See* 25 C.F.R. § 151.3. The Indian Reorganization Act ("IRA"), 25

U.S.C. §§ 5101–44, provides the Secretary with the discretion to acquire trust title to land or interests in land.  *See* Dep't of the Interior, Bureau of Indian Affairs, Office of Trust Services, Division of Real Estate Services, *Acquisition of Title to Land Held in Fee or Restricted Fee Status (Fee-to-Trust Handbook)* at 4, *available at* https://www.bia.gov/node/4361/handbook/attachment/newest, *last visited* October 7, 2020.   The Secretary bases the discretionary decision on whether to make a trust acquisition on the basis of criteria set forth in the regulations at 25 C.F.R. Part 151.  The criteria include the tribe's need for the land, the purposes for which the land will be used, tax-related impacts to state and local governments, jurisdictional problems and potential conflicts of land use, whether BIA is equipped to discharge any additional responsibilities resulting from the trust status, and whether the tribe has submitted adequate environmental-related information.  *See id.* § 151.10(b)-(d), (f)-(h); *see also id.* § 151.11(b)-(c) (off-reservation acquisition factors).

These criteria do not apply where special judicial or legislative authority mandates an acquisition, because in such a circumstance the Secretary lacks the discretion to decide whether or not to acquire land in trust.  A mandatory trust acquisition is "[a] trust acquisition directed by Congress or a judicial order that requires the Secretary to accept title to land into trust, or hold title to certain lands in trust by the United States, for an individual Indian or Tribe."  *Id.* at 5.  In the absence of such an express direction from Congress or the judiciary, however, the Secretary's only authority to acquire land in trust for a Tribe stems from the discretionary authority provided by IRA § 5 and 25 C.F.R. part 151.  The Secretary lacks the power to take land into trust through the mandatory acquisition process unless it is specifically provided to him.

    **B.**  **The Buena Vista Rancheria and History of the Fee-to-Trust Application**

In 1906, Congress authorized the BIA to purchase land and water rights for the use of Indians in California who lived outside of reservations or who lived on reservations that did not contain land suitable for cultivation.  Act of June 21, 1906, Pub. L. No. 59-258, 34 Stat. 325.  Parcels of land, called rancherias, were purchased under this authority, with approximately 82 rancherias eventually established throughout California.  The United States purchased the Buena Vista Rancheria to be held in trust for the Tribe in 1927.

In 1958, Congress enacted the California Rancheria Act.  Act of Aug. 18, 1958, Pub. L. No. 85-671, 72 Stat. 619 ("Rancheria Act"), amended by the Act of Aug. 11, 1964, Pub. L. No. 88-419, 78 Stat. 390.  The Act provided authority for the termination of rancherias, including the Buena Vista Rancheria, and established a procedure for the termination and the distribution of the land and other assets to eligible Indians in fee simple.  *Id.*  After termination, the lands would become subject to all state and federal taxes and the distributees and their dependents would lose their special federal status as Indians.  *Id.*

Pursuant to the Rancheria Act, in 1959 the United States distributed the land of the Buena Vista Rancheria in fee to two tribal members, Louie and Anne Oliver, as joint tenants pursuant to a distribution plan.  26 Fed. Reg. 3073 (Apr. 11, 1961).  Annie Oliver died in 1972, leaving Louie Oliver as the sole owner until his death in 1973, after which his interests passed under state law to his children, Enos Oliver and Lucille Lucero.  Enos Oliver died in 1978, survived by his wife, Lydia Hart Oliver, and his step-son, John Fielder.  Lydia Oliver died in 1981, leaving John Fielder

with his parents' interest in the property. At this time it appears John Fielder and Lucille Lucero each held a 50% share in the ownership of the Rancheria.

1986, Lucille Lucero, the surviving child of the original Rancheria distributees, conveyed her interest in the property by grant deed to Donna Marie Potts, a Tribal member whom Lucero raised but who is not a lineal descendant of the original distributees. Ms. Potts later received the remaining interest in the property from John Fielder, consolidating ownership of the Rancheria. In August 1996, Ms. Potts conveyed the entire Rancheria to the Tribe by grant deed.

Later in 1996, the Tribe submitted to BIA what amounted to its first mandatory trust acquisition request for the Rancheria. The Tribe sent a grant deed for the Rancheria to BIA, and BIA disapproved by failing to issue an Acceptance of Conveyance, and citing 25 C.F.R. Part 151. *See* Letter from Harold Brafford, Superintendent, BIA Central California Agency, to Sheldon Johnson, Amador County Clerk / Recorder (Nov. 18, 1996). And in 2004, the BIA again informed the Tribe that the Buena Vista Rancheria was not held in trust and again referred the Tribe to the fee-to-trust application process at 25 C.F.R. Part 151. *See* Letter from Pacific Regional Director, BIA, to Judith Albietz (Dec. 16, 2004).

The Tribe informed BIA that it wished to have land taken into trust in 2010, again seeking a mandatory acquisition under *Tillie Hardwick*. *See* Letter from Arnold Samuel to Leonard Risling, Acting Pacific Regional Director, BIA (July 2, 2010). Through an October 10, 2018 letter, BIA notified the Tribe formally that "the subject property was not eligible to be brought into trust under the mandatory provisions [of the 1983 Stipulated Judgment] and will have to be resubmitted to be processed as a discretionary application." Letter from Leonard Risling, Acting Pacific Regional Director, BIA, to Chairperson Morningstar Pope (Oct. 10, 2018). BIA returned the application to the Tribe at that time and notified the Tribe that it could "submit a new complete application at any time in the future." *Id.*

### C. *Tillie Hardwick v. United States*

On July 12, 1979, individuals who were distributees of terminated rancherias sought restoration of their status as Indians and entitlement to federal benefits, as well as the right to reestablish their tribes as recognized governmental entities. *Hardwick v. United States*, No. 79-1710 (N.D. Cal. filed July 12, 1979). On August 2, 1983, the parties filed a stipulation for entry of judgment ("Stipulated Judgment"). The Stipulated Judgment asked the Court to "certify a class consisting of all those persons who received any of the assets of the rancherias listed and described in paragraph 1 pursuant to the California Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect to any real property they received as a result of the implementation of the California Rancheria Act." Stipulated Judgment at ¶ 2. The Stipulated Judgment settled the claims with respect to the members of seventeen rancherias, providing, *inter alia*, that (1) the individuals' status "as Indians under the laws of the United States shall be restored and confirmed," (2) Interior would recognize the restored rancherias "as Indian entities with the same status as they possessed prior to distribution of the assets of these Rancherias under the California Rancheria Act," and (3) certain individuals holding former rancheria lands could reconvey the lands to the United States to be held in trust. *Id.* at ¶¶ 3, 4, 6.

Specifically, Paragraph 6 of the Stipulated Judgment provided that:

> Any named individual plaintiff or class member who received or presently owns fee title to an interest in any former trust allotment by reason of the distribution of the assets of any of the Rancherias listed in paragraph 1 shall be entitled to elect to restore any such interest to trust status, to be held by the United States for the benefit of such Indian person(s).

Paragraph 8 provided that:

> Any named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said Rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria . . . .

And Paragraph 7 provided that any federally-recognized tribe that received fee title to lands as part of the distribution of Rancheria assets could "arrange to convey to the United States all community-owned lands within their respective Rancherias to which the United States issued fee title in connection with or as the result of the distribution of the assets of said Rancherias" within two years of the notice of the Stipulated Judgment.

## II.     ANALYSIS

We conclude again that BIA lacks authority to take the Buena Vista Rancheria into trust through the mandatory acquisition procedures because this fee-to-trust application does not fall into any of the categories in the Stipulated Judgment. First, the Tribe is not "a named plaintiff or other class member" such that the Tribe would fall within Paragraphs 6 or 8. Second, these provisions were intended to apply to individuals, not tribes. The Stipulated Judgment specifically addresses tribes through Paragraph 7, granting them the option to convey their community-owned land to the United States to be held in trust, so long as they did so *within two years* of the 1983 judgment. The Tribe's request here is far outside that timeframe. Because the acquisition does not fall within the categories established in the Stipulated Judgment, the BIA lacks authority to make a mandatory acquisition here.

### A.     Paragraph 8 applies to land owned by individuals, not tribes.

Paragraph 8 of the Stipulated Judgment provides that:

> Any named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said Rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria[.]

The Tribe, however, does not fall under Paragraph 8 because this paragraph applies to individuals, not tribal government entities. The Tribe is not one of the individuals who are "named plaintiff[s] or other class member[s]." The *Tillie Hardwick* litigation was brought by individual Indian

distributees who received title to former rancheria land after the purported termination of various rancherias. Order Re: Class Certification, *Tillie Hardwick et al. v. United States*, No. C-79-1710-SW (N.D. Cal. filed Feb. 28, 1980). The Second Amended Complaint, filed after the Stipulated Judgment, added several rancherias as plaintiffs, but Buena Vista Rancheria was not among those rancherias. Thus, the Tribe is not a named plaintiff.

Nor is the Tribe otherwise a member of the plaintiff class. The plaintiffs brought the action on their own behalf and on behalf of a class of similarly situated persons, which included "all distributees of the Rancherias listed" in the Complaint, and any "heirs or legatees of said distributees and any Indian successors in interest to such lands." Compl. ¶ 17. The Stipulated Judgment provided that:

> The Court shall certify a class consisting of all those persons who received any of the assets of the Rancherias listed and described in paragraph 1 pursuant to the California Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect to any real property they received as a result of the implementation of the California Rancheria Act.

Stipulated Judgment ¶ 2. Buena Vista Rancheria is one of the Rancherias listed in Paragraph 1 of the Stipulated Judgment. The Tribe is not a "person who received any of the assets" of the Buena Vista Rancheria. Nor is the Tribe an "heir or legatee of said distributees," as it did not inherit title to the land through a decedent; rather, it received the land through a grant deed.

The Tribe also cannot be considered an Indian "successor in interest" of the distributees because the term "successor in interest" in the Stipulated Judgment refers to individuals, not tribes. First, the *Tillie Hardwick* litigation was brought by individuals, not rancherias. The plaintiff class consists of "persons" and does not refer to rancherias as part of the class. As the Northern District of California has explained, "the class included all distributees of lands pursuant to the California Rancheria Act *and all individuals who inherited such lands from a distributee*." *Hardwick v. United States*, 2012 WL 6524600, at *4 (emphasis added). Second, any land-into-trust applicant under Paragraph 8 must request that land be "held in trust for his/her *individual* benefit or the benefit of any *other member* or *members* of the Rancheria." Stipulated Judgment ¶ 8 (emphasis added). It does not reference land held in trust for tribes or the Rancheria as a whole. The Tribe is a collective governmental entity, not an individual, and the Stipulated Judgment expressly provided for land-into-trust applications by Tribes through Paragraph 7, not Paragraph 8.

### B. Paragraph 7 governs tribes and their community-owned lands, as here.

While Paragraph 8 applies to individuals, Paragraph 7 specifically applies to "Indian Tribes, Bands, Communities, or groups." Paragraph 7 provides that:

> Within two years of date of notice of this judgment, as provided in paragraph 9, the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed that are recognized by the Secretary of the Interior pursuant to paragraph 4 herein may arrange to convey to the United States all community-owned lands within their respective rancherias to which the United States issued fee title in connection with

> or as the result of the distribution of the assets of said rancherias, to be held in trust by the United States for the benefit of said Tribes, Bands, Communities or groups[.]

The Buena Vista Rancheria of Me-Wuk Indians of California is a Tribe, and thus Paragraph 7 is the governing article. Because that Paragraph included a two-year deadline to convey land into trust, the BIA no longer has the authority to take land into trust for the Tribe through the mandatory process.

This conclusion is supported by a comparison of Paragraph 7 and Paragraph 8. Paragraph 7, which applies to tribes and their "community-owned lands," contains a two-year limitation on the conveyance of land to the United States to be held in trust. Stipulated Judgment ¶ 7. Conversely, Paragraph 8, which applies to individuals, does not contain a time limitation. *Id.* ¶ 8. If "class member" in Paragraph 8 is interpreted to include tribes, tribes could then apply for their land to be taken into trust either under Paragraph 7 with its two year limitation, or under Paragraph 8 with no time limitation at all. This result would make Paragraph 7 meaningless, essentially writing that Paragraph and its time limitation out of the Stipulated Judgment.

The IBIA's conclusion in *Santana v. Sacramento Area Director*, 33 IBIA 135 (Jan. 28, 1999), is consistent with this reading. In *Santana*, an appeal from a decision regarding restoration of trust status to lands subject to the stipulated judgment in *Tillie Hardwick*, the plaintiffs were two individuals, one of whom was a distributee of the Cloverdale Rancheria. *Id.* at 136, 141. These plaintiffs requested that BIA take three parcels of land into trust and argued that the trust acquisition was mandatory under the Stipulated Judgment. *Id.* at 136. One of the parcels was community-owned at the time of the Stipulated Judgment but was later transferred to plaintiff's individual ownership. *Id.* at 142. The IBIA first "held that rights under the stipulated judgment vested as of the date the [Stipulated] judgment was entered." *Id.* On the date of the Stipulated Judgment, this parcel was community-owned, and therefore IBIA reasoned that it was governed by Paragraph 7 and its two-year time limit, regardless of its later transfer into individual ownership:

> Paragraph 7 of the stipulated judgment deals with lands which were community-owned when the judgment was entered, and paragraph 8 deals with lands which were individually owned at that time. If community-owned lands could be transferred into individual ownership at any time, with BIA being required to treat those lands as then falling under paragraph 8 of the stipulated judgment, paragraph 7 would be rendered a nullity.

*Id.* at 142–43. The converse must also be true, as is the case here. If individuals could transfer land to tribes as Ms. Potts did, and the Tribe could then treat those lands as remaining subject to mandatory acquisition under the rules for individuals in Paragraph 8, it would render Paragraph 7 meaningless, and would circumvent the time limit agreed to in the Stipulated Judgment. This is not a reasonable, or even permissible, reading of the Stipulated Judgment, and therefore I cannot adopt it.

### III.  CONCLUSION

Considering the analysis above, I reaffirm the 2018 decision that BIA lacks authority to acquire the Rancheria in trust for the Tribe through the mandatory acquisition process. The Tribe's application does not fall within the parameters of the *Tillie Hardwick* Stipulated Judgment, and without such judicial or legislative authority, BIA cannot process an application as a mandatory acquisition. The Tribe may, however, apply for a discretionary acquisition of the Rancheria under 25 C.F.R. part 151, and we again recommend the Tribe submit such an application.

    Sincerely,

    Amy Dutschke
    Pacific Regional Director
    Bureau of Indian Affairs
    United States Department of the Interior