UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TILLIE HARDWICK, et al., | Case No. 79-cv-01710-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT** |
| UNITED STATES OF AMERICA, et al., | Docket No. 364 |
| Defendants. | |

The Buena Vista Rancheria of Me-Wuk Indians ("the Tribe") has moved the Court for an order requiring the Bureau of Indian Affairs (BIA) to take restored Rancheria lands into trust pursuant to the 1983 Stipulated Judgment.  The Tribe previously moved the Court for an order requiring the BIA to stop taking any action with respect to the Tribe's immediate fee-to-trust matter until the Court ruled on the pending motion to enforce the 1983 Stipulated Judgment.  The Court denied the motion, finding that the Tribe had failed to show that it would be irreparably harmed absent a stay.  The BIA subsequently issued a decision letter reaffirming its prior conclusion that it "lacks authority to acquire the Rancheria in trust for the Tribe through the mandatory acquisition process," and again inviting the Tribe to "apply for a discretionary acquisition of the Rancheria under 25 C.F.R. part 151."  *See* Notice by USA of Agency Action (Docket No. 388).  For the reasons stated below, the Court now **GRANTS** the Tribe's motion to enforce the 1983 Stipulated Judgment.

///

///

///

# I.   FACTUAL AND PROCEDURAL BACKGROUND

A.   Factual Background Pre-1983 Stipulated Judgment

Ancestors of the Buena Vista Rancheria of Me-Wuk Indians have occupied the land throughout Amador County and its surrounding environs for thousands of years.  Mot. at 7.  In the early 20th century, the United States created a network of land parcels called "Rancherias" for landless Indian tribes throughout California.  *Id.*  It purchased the Buena Vista lands in 1927, establishing the Buena Vista Rancheria as a reservation for the Tribe and holding it in trust for the benefit of its members.  *Id.*  In 1958, Congress enacted the California Rancheria Act ("Rancheria Act"), which disestablished many California Rancherias (including the Buena Vista Rancheria) and prescribed a procedure for the distribution of the land and other assets to eligible Indians in fee simple.  Opp'n at 3.  After termination, the lands became subject to state and federal taxes and the distributees and their dependents lost their special federal status as Indians.  *Id.*  The United States distributed the Buena Vista Rancheria lands in fee to two members of the Tribe, Louie and Annie Oliver, as joint tenants in 1959.  *Id.*

In 1979, the Indian residents of seventeen terminated Rancherias joined in a class action lawsuit against the United States, seeking to restore the reservations status of the affected lands.  Mot. at 8.  The suit culminated in a court-approved Stipulated Judgment in 1983 between the individual distributees of the terminated Rancherias and the United States.  Opp'n. at 3-4.

B.   The 1983 Stipulated Judgment

The 1983 Stipulated Judgment first provides that seventeen enumerated Rancherias are "the subject of the provisions of paragraphs 2 through 13" of the Judgment.  *See* Stipulation for Entry of Judgment ("1983 Judgment") ¶ 1 (Docket No. 91).  Buena Vista is among the enumerated Rancherias.  *See id.*  The Judgment certifies a class consisting of "all those persons who received any of the assets of the rancherias listed and described in paragraph 1 pursuant to the California Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect to any real property they received as a result of the implementation of the California Rancheria Act."  *See id.* ¶ 2.  It restores the status of individual plaintiffs and other class members of the seventeen Rancherias as Indians under the laws of the United States, and directs the Secretary of

2

the Interior to "recognize the Indian Tribes, Bands, Communities or groups" of these seventeen Rancherias with the same status they possessed prior to the 1958 Rancheria Act.  *See id.* ¶ 4.

There are three **mandatory trust provisions** in the Stipulated Judgment which benefit the enumerated Rancherias.  Paragraph 6 provides:

> "[a]ny named individual plaintiff or class member who received or presently owns fee title to an interest in any former trust allotment by reason of the distribution of the assets of any of the Rancherias listed in paragraph 1 shall be entitled to elect to restore any such interest to trust status, to be held by the United States for the benefit of such Indian person(s)."  *See id.* ¶ 6.

Paragraph 7, in turn, provides:

> "[w]ithin two years of date of notice of this judgment, as provided in paragraph 9, the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in paragraph 1 that are recognized by the Secretary of the Interior pursuant to paragraph 4 herein may arrange to convey to the United States all community-owned lands within their respective rancherias to which the United States issued fee title in connection with or as the result of the distribution of the assets of said rancherias, to be held in trust by the United States for the benefit of said Tribes, Bands, Communities or groups…"  *See id.* at ¶ 7.

The third mandatory trust provision, paragraph 8, provides:

> "[a]ny named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria."  *See id.* ¶ 8.

In plain terms, class members could invoke the mandatory trust election provisions to restore the enumerated rancherias to trust status (*i.e.*, to the same federal recognition they enjoyed before the Rancheria Act was passed in 1958) and to avail themselves of the accompanying tax benefits.

C.    The Tribe's Attempted Conveyances in 1996 and 2010

The Government asserts that the owners of the Rancheria, Louie and Annie Oliver (who received fee title to the Rancheria from the United States in 1959), died without conveying the Rancheria to the United States to be held in trust.  Opp'n. at 5.  At oral argument, counsel for

United States District Court
Northern District of California

1   Buena Vista informed the Court that, in 1983, title to the Rancheria was held by Lucille Lucero,

2   the Olivers' surviving child.  Ms. Lucero conveyed her interest by grant deed to Donna Marie

3   Potts, then-spokesperson for the Tribe, in 1996.  *Id.*  Ms. Potts later received the remaining interest

4   in the property from another individual, John Fielder.  Opp'n at 5.  That same year, Ms. Potts

5   conveyed the Rancheria by grant deed to the Tribe.  *Id.*

6        On July 30, 1996, Buena Vista attempted to exercise the mandatory trust election under the

7   1983 Judgment by conveying the lands to the BIA.  Pope Decl. ¶ 4 (Docket No. 364-1).  The

8   conveyance included the grant deed vesting the Tribe with title to the Rancheria and cited the

9   *Tillie Hardwick* Stipulated Judgment.  *Id.* at ¶¶ 4, 5.  On November 18, 1996, the BIA

10   acknowledged the grant deed but stated that it lacked authority to accept the deed into trust,

11   instructing the Tribe to go through the Part 151 process for discretionary acquisitions.  Pope Decl.

12   ¶ 6.  Under BIA's Part 151 process, state and local governments having regulatory jurisdiction

13   over the land to be acquired in trust status are given 30 days "in which to provide written

14   comments as to the acquisition's potential impacts on regulatory jurisdiction, real property taxes

15   and special assessments."  *See* 25 CFR § 151.10.  Additionally, the Secretary of the Interior

16   considers certain criteria when evaluating requests for on-reservation acquisitions in trust status,

17   *e.g.*, "[t]he need of … the tribe for additional land," as well as "[t]he purposes for which the land

18   will be used" and "the impact on the State and its political subdivisions resulting from the removal

19   of the land from the tax rolls."  *See* 25 CFR § 151.10(a)-(h).  After BIA returned the deed and

20   instructed the Tribe to go through this discretionary acquisition process, the Tribe took no further

21   action because it lacked the resources to investigate whether the BIA had made a mistake in

22   returning the deed.  Pope Decl. ¶ 6.

23        On July 7, 2010, Buena Vista once again requested that the BIA take the Rancheria in trust

24   pursuant to the 1983 Stipulated Judgment.  Mot. at 16.  The Tribe claims that BIA Regional Office

25   staff and leadership "responded in apparent agreement that the conveyance was mandatory under

26   the 1983 Judgment."  *Id.*  It began working with the Regional Office to satisfy the pre-acquisition

27   "requirements" listed in the BIA Mandatory Trust Handbook, *e.g.*, obtaining title insurance from a

28   commercial title company.  *Id.* at 17.  However, in 2012, the BIA explained that, since the Tribe

United States District Court
Northern District of California

had announced its intent to build a casino on the Rancheria, the request should be treated as a "gaming application" subject to the agency's discretionary Part 151 process.  *Id.*  In the ensuing years, the Tribe continued working with various personnel throughout BIA and DOI in the hopes that a resolution could be reached on the matter.  *Id.* at 18.  Eventually, the Tribe received a letter from the BIA (dated October 10, 2018) which stated that the Buena Vista Rancheria was ineligible to be brought into trust under the mandatory provisions of the 1983 Stipulated Judgment, and that the deed should be resubmitted as a discretionary application.  *Id.* at 19.  Buena Vista appealed this decision to the Interior Board of Indian Appeals ("IBIA"), and on request from the BIA Regional Solicitor, the IBIA remanded the matter to the BIA on April 25, 2019.  *Id.*  The BIA's final decision, issued in October 2020, articulates the same rationales for denying the Tribe's request (*i.e.*, that the BIA lacks authority under the Stipulated Judgment and that the Tribe's request should be processed as a discretionary acquisition under the Part 151 process).

## II.      LEGAL STANDARD

A.      Motion to Enforce

Under the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101-44, the BIA has discretion to acquire trust title to land or interests in land.  *See* Department of the Interior, Bureau of Indian Affairs, Office of Trust Services, Division of Real Estate Services, Acquisition of Title to Land Held in Fee or Restricted Fee Status ("Fee-to-Trust Handbook") at 4, available at https://www.bia.gov/node/4361/handbook/attachment/newest (last visited October 7, 2020).  The BIA's discretionary acquisitions are distinguishable from its *mandatory* acquisitions—such as the 1983 Judgment—whereby "Congress or a judicial order [] requires the Secretary to accept title to land into trust, or hold title to certain lands in trust by the United States, for an individual Indian or Tribe."  *Id.* at 5.  Mandatory acquisitions are self-executing because "[t]he Secretary [of the Interior] does not have discretion to deny the request to accept title of land into trust."  *Id.* at 31.  Thus, if the Court finds that the 1983 Judgment mandates the BIA to take the lands into trust, the BIA will be bound by that Order; it could not refuse to take the lands into trust.  *See Nat. Res. Def. Council v. Jewell*, 749 F. 3d 776, 784 (9th Cir. 2014) (en banc) ("[t]he agency lacks discretion only if another legal obligation makes it impossible for the agency to exercise discretion for the

United States District Court
Northern District of California

1    protected species' benefit").  The issue in this case turns on the interpretation of the 1983

2    Judgment.  In particular, the Tribe contends Paragraph 8 of the Judgment applies.  The

3    Government contends otherwise.

### III.    DISCUSSION

5    In response to the Tribe's asserted application of Paragraph 8, the Government argues: (1)

6    paragraph 8 applies to land owned by individuals, not Indian tribes; (2) the Tribe therefore cannot

7    be considered a "named plaintiff or other class member" for purposes of paragraph 8; (3) the Tribe

8    also cannot be considered a "successor in interest," as the class is defined in paragraph 2, because

9    only individuals are successors in interest; and (4) the Tribe cannot be deemed a "class member"

10   within the meaning of paragraph 8, because this would circumvent the two-year time limitation in

11   paragraph 7 and render it a nullity.

12   A.    The IBIA's Interpretation of the 1983 Stipulated Judgment in *Santana*

13   The IBIA has previously interpreted the 1983 Stipulated Judgment in an appeal from a

14   BIA decision that required fee-to-trust applications under the 1983 Judgment to be processed

15   under 25 C.F.R. Part 151.  *Santana v. Sacramento Area Director*, 33 IBIA 135, 1999 I.D. LEXIS

16   10, at *2-6.  In *Santana*, each of the three parcels at issue had been held in trust by the United

17   States as part of the Cloverdale Rancheria, passed out of trust under the California Rancheria Act

18   of 1958, and restored to federal recognition under the 1983 Judgment.  *Id.* at *2-3.  *See also* 1983

19   Judgment ¶ 1 (including "Cloverdale" among the seventeen enumerated Rancherias subject to the

20   judgment).

21   First, the IBIA examined the two parcels owned by Appellant Santana, which the BIA area

22   director had reviewed under the agency's Part 151 process.  *Id.* at *11.  Upon termination of the

23   Cloverdale Rancheria in 1958, Mr. Santana was one of five individual distributees of the

24   Rancheria's lands.  *Id.*  The IBIA held that, for purposes of determining which of the mandatory

25   trust provisions (paragraphs 6, 7, or 8) applies to a fee-to-trust application, it must look at how a

26   particular parcel was owned ***at the time the agreement was entered into***.  *See id.* at *14

27   ("Appellants' rights to trust restoration vested, at the latest, *as of the date the court accepted the*

28   *parties' agreement*") (emphasis added).  The IBIA then distinguished paragraphs 7 and 8:

1

> "The Board finds nothing in the stipulated judgment which places a
> time limitation on requests to restore individually owned lands to
> trust status. Although paragraph 7 of the stipulated judgment places
> a limitation on requests to restore community-owned lands, there is
> no such limitation in paragraph 8."

*Id.* at *15 (emphasis added).  The only restrictions which Paragraph 8 imposes on requests to

restore individually owned lands to trust status are "that the class member/owner must elect to

convey the distributed lands to the United States to be held in trust."  *Id.* at *14.

Because Mr. Santana "ha[d] complied with all of the requirements contained in the

stipulated judgment for restoring his individually owned distributed lands to trust status," the BIA

"erred in subjecting his requests to a second scrutiny under 25 C.F.R. Part 151."  *Id.* at *16.  The

IBIA remanded for verification that "the parcel(s) was individually owned when the stipulated

judgment was entered."  *Id.* at *17.

The third parcel belonged to the remaining appellants.  They conceded that the parcel was

initially deeded to the Dusho association, and that they only acquired individual ownership after

entry of the stipulated judgment.  *Id.* at *18.  Nonetheless, they argued that they were "class

members" within the meaning of paragraph 3 of the Judgment and were therefore entitled to

invoke the timeline-free mandatory trust election provision of paragraph 8.  *Id.*  The IBIA rejected

this argument, again finding that ownership status *at the time of the 1983 Judgment* is dispositive:

> "Paragraph 7 of the stipulated judgment deals with lands which were
> community-owned *when the judgment was entered*, and paragraph 8
> deals with lands which were individually owned *at that time*. If
> community-owned lands could be transferred into individual
> ownership at any time, with BIA being required to treat those lands
> as then falling under paragraph 8 of the stipulated judgment,
> paragraph 7 would be rendered a nullity."

*Id.* at *19 (emphasis added).  Thus, if the parcel was community-owned at the time of the 1983

Judgment and the request for trust restoration was not made within the two-year timeframe

provided for in Paragraph 7, then BIA properly considered the request to place this parcel into

trust status under the discretionary Part 151 process and not under the mandatory provisions of the

1983 Judgment.  *Id.*

*Santana* provides the Court with two useful principles: (1) the Court must look at the status

of land ownership *at the time the 1983 Judgment was entered into* in order to determine whether

1  the mandatory fee-to-trust application is subject to the two-year time limit of Paragraph 7, and (2)

2  parties cannot circumvent this time limit by subsequently transferring community-owned parcels

3  to individual ownership.

4        In the case at bar, the Government argues paragraph 8 does not apply to the Tribe's

5  conveyance because that would "render Paragraph 7 'a nullity' and circumvent the time limit

6  agreed to in the Stipulated Judgment." Opp'n at 8.  Not so.  Under *Santana*, the Court looks to the

7  status of land ownership in 1983 to determine whether the two-year time limit of paragraph 7

8  applies.  Because the Buena Vista Rancheria was individually owned – not owned by an Indian

9  Tribe, Board, or community or groups of the rancheria – at the time of the 1983 Judgment, the

10  two-year time limit does not apply.  The Government's concern about circumvention of paragraph

11  7 is misplaced, because the Buena Vista Rancheria was never subject to the two-year time limit in

12  the first place.

13  B.    The Tribe as a "Successor in Interest"

14        Since the two-year time limit of paragraph 7 does not apply to the Tribe's conveyance, the

15  Tribe contends it has standing to invoke the mandatory trust election provision of paragraph 8.

16  This depends upon whether the Tribe is a "class member" under Paragraph 8.  That question turns

17  on whether it is a "successor in interest" includable in the class definition in paragraph 2. *See*

18  1983 Judgment ¶ 2 ("[t]he Court shall certify a class consisting of all those persons who received

19  any of the assets of the rancherias listed and described in paragraph 1 pursuant to the California

20  Rancheria Act and any Indian heirs, legatees or successors in interest of such persons with respect

21  to any real property they received as a result of the implementation of the California Rancheria

22  Act").

23        The 1983 Judgment does not define "successor in interest."  The Court thus begins with

24  the plain meaning of the term "successor in interest" and then looks to the purpose of the

25  Stipulated Judgment. *See Me v. Thiboutot*, 448 U.S. 1, 13-14 (1980) ("[w]e have recognized

26  consistently that statutes are to be interpreted not only by a consideration of the words themselves,

27  but by considering, as well, the context, the purposes of the law, and the circumstances under

28  which the words were employed") (internal citations omitted).

United States District Court
Northern District of California

1    Black's Law Dictionary's defines successor in interest as: "[s]omeone who follows another

2   in ownership or control of property. A successor in interest retains the same rights as the original

3   owner, with no change in substance."  Black's Law Dictionary (10th ed. 2014) (p. 1660, col. 2).

4   Status as a successor in interest does not turn on the legal form of the entity – it is not restricted to

5   individuals.  Thus, it is common for courts to find that legal entities such as corporations are

6   successors in interest in various contexts.  *See*, *e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 421 F.3d

7   1053, 1057 (9th Cir. 2005) (an appeal by a widow of the denial of her claim for life insurance

8   benefits from her husband's employee welfare benefit plan, which was administered by Alta

9   Health & Life Insurance Company, the "successor in interest" to the Home Life Financial

10   Assurance Company's rights and responsibilities under the plan); *Aetna Casualty & Surety Co. v.*

11   *Merritt*, 974 F.2d 1196, 1197 (9th Cir. 1992) (in a suit regarding the scope of insurer liability for a

12   joint venture condominium project, the Court noted that defendant RFS Development Corporation

13   "is the successor in interest to Foothill [Service Corporation]," another named defendant); *Allied-*

14   *Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 773 (1992) ("Petitioner Allied-Signal, Inc., is

15   the successor-in-interest to the Bendix Corporation (Bendix). The present dispute concerns

16   Bendix's corporate business tax liability to the State of New Jersey for the fiscal year ending

17   September 30, 1981").

18    In fact, the U.S. Supreme Court has used the term "successor in interest" to describe the

19   nonprofit successor of an Indian Tribe.  *S.C. v. Catawba Indian Tribe*, 476 U.S. 498, 500 n.2

20   (1986) ("Respondent, Catawba Indian Tribe, Inc., is a nonprofit corporation organized under the

21   laws of South Carolina in 1975. Like the District Court and the Court of Appeals, *we assume that*

22   *respondent is the successor in interest of the Catawba Indian Tribe of South Carolina*") (emphasis

23   added); *see also Delorme v. United States*, 354 F.3d 810, 814 n.6 (8th Cir. 2004) ("[a]t least two

24   groups currently claim to be Little Shell Bands descended from the Pembina led by Chief Little

25   Shell in the late nineteenth century … [t]he Montana Tribe appears to be the successor in interest

26   to the Little Shell Band of Chippewa Indians").

27    Hence, the term "successor in interest" commonly refers to all successors in interest,

28   irrespective of their legal status as individuals, corporations, etc.  If the parties to the 1983

United States District Court
Northern District of California

1   Judgment intended "successor in interest" to have some special meaning different from the

2   common meaning, the Court would expect to find language to that effect.  The 1983 Judgment

3   restores federal recognition to Indian *Tribes* in paragraph 4, and it would be odd for the parties to

4   prevent these Tribes from inheriting individually owned lands and conveying them in trust under

5   paragraph 8, without so specifying.  And notably, Paragraph 6 of the 1983 Judgment makes

6   reference to "[a]ny named *individual* plaintiff or class member."  1983 Judgment ¶ 6 (emphasis

7   added). Paragraph 8, however, does not.  *See* 1983 Judgment ¶ 8 ("[a]ny named plaintiff or other

8   class member herein may elect to convey to the United States…").

9           The Court's reading of "successor in interest" comports with the *purpose* of the 1983

10   Judgment, which is to restore the enumerated Rancherias—along with their associated Indian

11   Tribes—to the federal status they enjoyed pre-1958.  It is true, as the Government notes, that

12   Paragraph 2 defines the class as all "persons" having ownership interests in the enumerated

13   rancherias, but this is because the enumerated rancherias were, by and large, individually owned

14   as a direct result of the California Rancheria Act of 1958.  The purpose of the 1983 Judgment was

15   to undo the effects of the 1958 Act by restoring federal recognition to Indian Tribes and

16   Rancherias.  It would be peculiarly contradictory for the parties to restore federal recognition to

17   these Tribes under paragraph 4 and simultaneously deny them any benefits as "successors in

18   interest" under paragraph 2.  Absent a clearly articulated intent by the parties to depart from the

19   ordinary meaning of the term, the Court finds that the Buena Vista Rancheria of Me-Wuk Indians

20   is a successor in interest to the Olivers' real property interest in the Buena Vista Rancheria.

21   C.      The Three Mandatory Trust Provisions (Paragraphs 6, 7, and 8)

22           As noted above, Paragraph 6 of the 1983 Stipulated Judgment provides relief for "[a]ny

23   *named **individual** plaintiff* or class member" owning fee title to an interest in any of the

24   enumerated rancherias of paragraph 1.  1983 Judgment ¶ 6 (emphasis added).  Paragraph 8, in

25   turn, provides relief for "[a]ny *named plaintiff* or other class member" owning fee title to an

26   interest in these enumerated rancherias.  1983 Judgment ¶ 8.  The parties to the Judgment

27   presumably intended the difference in wording to have import, particularly because these two

28   paragraphs are exceedingly similar in every other respect.  This inference comports with the

                                                        10

United States District Court
Northern District of California

1  Court's judicial practice to "give effect, if possible, to every clause and word of a statute."

2  *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (internal quotation

3  marks omitted); *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("[i]t is, however, a

4  cardinal principle of statutory construction that we must give effect, if possible, to every clause

5  and word of a statute") (internal quotation marks omitted). Moreover, if the word "individual"

6  limits the word "plaintiff" in paragraph 6 (*i.e.*, as a means of restricting relief to individual

7  landowners), one would expect the same limitation to precede "successors in interest" in

8  paragraph 2 if the parties intended to limit successors in interest to individuals. It does not.[1]

9         Finally, a contrary interpretation would eviscerate the distinction between paragraphs 6 and

10  8. Paragraph 8 would be functionally equivalent to Paragraph 6. *See Yates v. United States*, 574

11  U.S. 528, 543 (2015) ("[T]he canon against surplusage is strongest when an interpretation would

12  render superfluous another part of the same statutory scheme") (internal citations omitted); *see*

13  *also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). At oral argument, counsel for the

14  Government was unable to articulate what purpose paragraph 8 would serve if it applies solely to

15  individuals.

16         The Tribe is therefore a successor in interest, as defined in paragraph 2, and has standing to

17  invoke the mandatory trust election provision of paragraph 8.[2]

18  ///

19  ///

20

21  _____

  [1] The BIA formally notified the Tribe that it has issued a disapproval of its application for a

22  mandatory trust acquisition. *See* Notice by USA of Agency Action (Docket No. 388). But that
decision is not dispositive because the Court now issues an order requiring Defendant to accept the

23  Tribe's land into trust pursuant to the 1983 Judgement. The Judgment, so construed, obviates the
BIA's discretion. *See Jewell*, 749 F. 3d at 784 ("[t]he agency lacks discretion only if another legal

24  obligation makes it impossible for the agency to exercise discretion for the protected species'
benefit").

25
  [2] The Tribe's standing to enforce the 1983 Judgment is consistent with the fact that it, and the

26  other listed Rancherias, are expressly provided rights under the Judgment. For instance, the Tribe
is one of the "Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in

27  paragraph 1" that had its federal recognition restored under Paragraph 4. *See* 1983 Judgment ¶ 4.
These Indian Tribes, Bands, Communities or groups could also convey all community-owned

28  lands to the United States to be held in trust under Paragraph 7, provided they did so within the
two-year time limit. *See id.* ¶ 7.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Tribe's Motion to Enforce the 1983 *Tillie Hardwick* Stipulated Judgment.  Defendants shall effectuate compliance forthwith.

This order disposes of Docket No. 364.

**IT IS SO ORDERED**.

Dated: November 13, 2020

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California