PADRAIC I. MCCOY (SBN 223341)
OCOTILLO LAW & POLICY PARTNERS, LLP
MCCOY@OLP-PARTNERS.COM
6650 GUNPARK DRIVE
BOULDER, CO 80301
(303) 500-7756

ATTORNEY FOR PLAINTIFF/MOVANT

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TILLIE HARDWICK, et al., | ) | Case No. 5-29-1710-SW |
| | ) | |
| Plaintiffs, | ) | Date: January 14, 2021 |
| | ) | Time: 1:30 p.m. |
| | ) | Courtroom: United States District |
| | ) | Court, San Francisco Courthouse, |
| | ) | Courtroom 5 – 17th Floor |
| | ) | 450 Golden Gate Avenue, |
| | ) | San Francisco, CA 94102 |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | **THE BUENA VISTA RANCHERIA** |
| | ) | **OF ME-WUK INDIANS' REPLY** |
| Defendants. | ) | **IN SUPPORT OF MOTION FOR** |
| | ) | **SANCTIONS** |
| _____ ____ | ) | |

      The facts presented in Buena Vista's Motion to Enforce the 1983 Stipulated Judgment and related filings show unequivocally the BIA mishandled (or refused to address directly) the Tribe's trust application for several years, and the BIA does not dispute these facts. Even apart from 25 CFR 151 (the BIA's fee-to-trust regulations), the BIA maintains published guidance and standard operating procedures to govern its handling of trust applications and requests. *See* "Acquisition of Title to Land Held in Fee or Restricted Fee Status (Fee-to-Trust Handbook)," Department of Interior (Jun. 28, 2016) (the "Handbook"). The Handbook includes entire sections on the processing of mandatory trust requests, such

as the Tribe's 2010 request; specifically, at Sections 3.1.3 and 4.1 of the Handbook. Yet the BIA makes no effort in its response to show how the agency applied those procedures to the Tribe's trust request. It is apparent that the BIA failed to follow its own procedures. Instead, due to a systematic bias against small tribes, or a bias against placing land into trust in California, or for national or regional political considerations, or for other reasons – none of which we can determine with any certainty to have been the cause of delay – the BIA strung the Tribe along for ten years and then issued an entirely obstructive and non-standard nondecision. While the BIA argues that the Court does not have authority to impose the attorney-fee and other sanctions requested here, the caselaw is clear that it does, and the agency's refusal to process the Tribe's <u>mandatory</u> trust request over a ten year period, despite the clarity of the 1983 Judgment, is ample evidence of bad faith.

  The BIA argues that sanctions are inappropriate because it issued a reasonable, good-faith decision. In fact, the BIA refused to issue any actual decision for ten years (its first "decision" was not a final, appealable decision), and did so only after the Tribe filed its motion to enforce. Had the Tribe not sought relief from this Court, the BIA's long record of conduct, inaction, and misdirection suggests—compellingly so—that no such decision would ever have been made. The Tribe in fact had no understanding of the cause for BIA's delay until the agency's October 2020 decision and its filings in this matter. And the agency's arguments against mandatory trust are hardly reasonable. Buena Vista maintains, as it has for the last decade, that the Stipulated Judgment is clear.  It is of course up to this Court whether the BIA's recent interpretation is in fact reasonable, but the agency's unwillingness to inform the Tribe of its interpretation of the Judgment for so many years is revealing and, the Tribe believes, bad faith in and of itself.

THE BUENA VISTA RANCHERIA'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 2

Indeed, the BIA's handling of the Tribe's trust election makes a mockery of its stated mission. The BIA promotes its responsibility over trust applications in this way, which underscores the agency's willing abdication of responsibility vis-à-vis the Tribe's trust application:

> *Taking land into trust is one of the most important functions Interior undertakes on behalf of the tribes. Acquisition of land in trust is essential to tribal self-determination.  Tribes are sovereign governments and trust lands are a primary locus of tribal authority. Indeed, many federal programs and services are available only on reservations or trust lands. The current federal policy of tribal self-determination is built upon the principles Congress set forth in the Indian Reorganization Act and reaffirmed in the Indian Self-Determination and Education Assistance Act. Through the protection and restoration of tribal homelands, this Administration has sought to live up to the standards Congress established eight decades ago and indeed to reinvigorate the policies underlying the Indian Reorganization Act.*

https://www.bia.gov/bia/ots/fee-to-trust. (visited December 17, 2020) Moreover, given the BIA's public admission of the essential and important benefits of tribal trust lands, it is hard to take seriously the agency's characterization of its persistent denial of these benefits to Buena Vista as non-injurious and lacking in bad faith.

Buena Vista seeks sanctions for (only some of) the expenses necessary to prevail in its motion and for the decade of BIA's refusal to comply with this Court's judgment. As documented in its motion for sanctions, the Court clearly has the power to impose such sanctions and the record confirms that sanctions are appropriate.

Dated: December 18, 2020                    Respectfully submitted,

*/s/ Padraic I. McCoy*
**Ocotillo Law & Policy Partners, LLP**
Counsel to the Buena Vista Rancheria

THE BUENA VISTA RANCHERIA'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 3